William H. KINSEY, and Estate of Irene S. Kinsey, Deceased, William H. Kinsey, Executor, Plaintiffs–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Defendant–Appellee.

No. 87–7237.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 14, 1988.

Decided Oct. 19, 1988.

William H. Kinsey, Portland, Or., pro se, and for plaintiffs-appellants.

Barbara I. Hodges, Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GOODWIN, Chief Judge, ALARCON, Circuit Judge, and TASHIMA, District Judge.*

TASHIMA, District Judge:

This appeal from the Tax Court involves income taxes payable for the years 1977 and 1978.[1] Only two issues are presented on appeal: (1) whether the deficiency notices for 1977 were timely issued by the Internal Revenue Service (the "Service" or "I.R.S."); and (2) whether the deficiencies determined in the 1977 notices were within the restriction contained in the Form 872–A executed by the parties.[2] The Tax Court held that the statutory notice of deficiency for 1977 was timely issued within the period of the Form 872–A waiver of the statute of limitations for assessment and that the adjustments giving rise to the notice of deficiency for 1977 were within the scope of the special limitation contained therein. We affirm.

## FACTUAL BACKGROUND

Taxpayers timely filed a 1977 federal income tax return, claiming a $58,408 loss. This figure represented their distributable share of the loss of Beech Mountain, Ltd. ("Beech Mountain"), in which taxpayers were limited partners. Beech Mountain typically invested in "straddles," in which a taxpayer entered into a pair of futures contracts to deliver or to take delivery of a specified quantity of a commodity (in this case, government securities). Through staggered deliveries, the taxpayer attempt-

---

* Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. The taxpayers on the 1977 return are William H. Kinsey and the Estate of Irene S. Kinsey, deceased. Mr. Kinsey alone is the taxpayer on the 1978 return. For simplicity's sake, plaintiffs will be referred to collectively as the "taxpayers."

2. The parties have stipulated that the resolution of the issues regarding the 1977 return will govern the 1978 return as well. They have also stipulated to the amounts of the deficiencies involved for each tax year.

ed to take tax losses in the first year, while deferring gains until the second.

On October 4, 1980, during the time their 1978 return was being audited, the taxpayers were informed by the Service that Beech Mountain was under examination and that the investigation could affect their 1977 return. The taxpayers were asked to execute consent forms extending the statute of limitations for assessment of 1977 taxes. In March, 1981, the taxpayers and the Service executed a Form 872, Consent to Extend the Time to Assess Tax ("Form 872"), which extended until April 15, 1982 the period during which the Service could assess federal income tax due on their 1977 return.

In February, 1982, taxpayers and the Service executed a Form 872–A, Special Consent to Extend the Time to Assess Tax ("Form 872–A," also called an "open-ended waiver"), which indefinitely extended the deadline by which the Service could assess any federal income tax due on the 1977 return. The Form 872–A also contained a special, typed-in limitation, as follows:

> The amount of any deficiency assessment is to be limited to that resulting from any adjustment to: (a) the taxpayer's distributive share of any item of income, gain, loss, deduction, or credit of, or distribution from Beech Mountain Ltd.; (b) the tax basis of the taxpayer's interest in the aforementioned partnership or organization treated by the taxpayers as a partnership; and, (c) any gain or loss (or the character or timing thereof) realized upon the sale or exchange, abandonment, or other disposition of taxpayer's interest in such partnership or organization treated by the taxpayer as a partnership; including any consequential changes to other items based on such adjustment.

On March 31, 1982, the Service sent the taxpayers a letter ("30–day letter") and a preliminary examination report, which suggested elimination of both the gain and loss reported by the partnership on the Treasury bill straddle and disallowed the deductions claimed for the taxpayers' distributive share of the partnership losses. The letter notified the taxpayers of the examiner's findings, asked them to sign and return an agreement to those findings and informed them that, in the event they did not accept the findings, they had 30 days to request an Appeals Office review. The letter further stated: "If we do not hear from you within 30 days, we will have to process your case on the basis of the adjustments shown in the examination report." The taxpayers did not reply.

On May 6, 1982, the Service sent the taxpayers another letter ("10–day letter"), again accompanied by a partial copy of the preliminary examination report. This letter stated, in part: "If we don't hear from you within 10 days, we will have to process your case on the basis of the adjustments shown in the examination report." Again, the taxpayers did not reply.

On March 14, 1983, the Service issued notices of deficiency for 1977 to the taxpayers. In the notices, the Commissioner disallowed deductions for the taxpayers' distributive share of the losses incurred by Beech Mountain on Treasury bill transactions, but included in their gross income their distributive share of the gain incurred on the transactions in those years. Taxpayers never sent a Form 872–T, Notice of Termination of Special Consent to Extend the Time to Assess Tax ("Form 872–T"), to the Service prior to the issuance of the notices of deficiency.

## STANDARD OF REVIEW

"We review decisions of the Tax Court on the same basis as District Court decisions in civil bench trials." *Roszkos v. Commissioner*, 850 F.2d 514, 516 (9th Cir.1988) (citation omitted). On this appeal, involving the issues of when and how a Form 872–A waiver was terminated and the scope of that waiver, the decision is subject to *de novo* review. *Id.*

## DISCUSSION

### I. WHETHER THE DEFICIENCY NOTICE WAS TIMELY

Before an asserted deficiency in tax payments can be assessed, a deficiency no-

tice must first issue. Internal Revenue Code of 1954, as amended ("I.R.C.") § 6213(a). The notice of deficiency (also called a "90–day letter") gives the taxpayer 90 days to file a petition with the Tax Court for redetermination of the deficiency or to pay the tax (and, if desired, claim a refund). Generally, the statute of limitations for assessing a tax deficiency expires three years after a timely return is filed. I.R.C. § 6501(a). Thus, the statute of limitations for assessing the taxpayers' 1977 liability would normally have expired on April 15, 1981. The three-year period may, however, be extended prior to the expiration of the normal period by the taxpayer's written agreement to waive the statute of limitations. I.R.C. § 6501(c)(4). Here, by executing Form 872 in March of 1981, the taxpayers extended the statute of limitations until April 15, 1982. In February, 1982, they extended the period indefinitely by executing Form 872–A. The timeliness of the 1977 notices of deficiency depends on when the Form 872–A extension terminated.

Form 872–A clearly indicates on its face that the indefinite extension of the statute of limitations terminates on the 90th day following one of three events: (1) the receipt by the I.R.S. of a Form 872–T; (2) the I.R.S.'s mailing a Form 872–T to the taxpayer; or (3) the I.R.S.'s mailing a deficiency notice. Acknowledging that they did not attempt to terminate the indefinite extension by sending the Service a Form 872–T, the taxpayers argue that they were not required to do so since there was an implied "mutual assent" between the I.R.S. and the taxpayers that any timely notice of deficiency must be issued within 120 days after March 31, 1982, the date the 30–day letter was mailed. The taxpayers reach this conclusion by reasoning that the 30–day letter implied that, if they did not appeal, a deficiency notice would be issued at the expiration of the 30–day period. They further contend that their failure to respond to the letter within the allotted period completed the "agreement" that deficiency notices would be issued at the end of the 30–day period and that, by the terms of Form 872–A, termination of the period of consent would occur 90 days later. The taxpayers then conclude that, since the notices of deficiency (which were not issued until March 14, 1983) were not issued within that time period, the notices are void as untimely. The taxpayers support this argument by pointing to the statement in the 30–day letter that, "If we do not hear from you within 30 days, we will have to process your case on the basis of the adjustments shown in the examination report." They maintain that the "process" to which the letter refers is the normal process which would have proceeded a few years earlier had the waivers not been executed. They further argue that, under various I.R.S. regulations and publications,[3] this process includes the issuance of a deficiency notice upon the expiration of the 30–day period, assuming that the taxpayer has not responded to the letter. Finally, the taxpayers claim that because Form 872–A contained an agreed-upon 90–day limit on issuance of a deficiency notice after termination, the Service had only 90 days after the end of the 30–day period in which to issue the notice.

All of these arguments are meritless. First, as noted above, Form 872–A expressly provides for three ways in which consent can be terminated. A taxpayer's failure to contact the I.R.S. within the 30–day period following the mailing of the 30–day letter (the implied "mutual assent" argument) does not comply with any of them. The Tax Court has several times held that the three means listed in Form 872–A are the exclusive means of termination. *E.g., Grunwald v. Commissioner*, 86 T.C. 85 (1986) (letter sent by I.R.S. ineffective to terminate Form 872–A); *Myers v. Commissioner*, T.C. Memo. 1986–518, 152 TCM (CCH) 43,447 (letter from taxpayer's attorney to I.R.S. ineffective to terminate Form

---

**3.** The taxpayers cite, *e.g.,* Federal Tax Regulations § 601.105(f) (use of Form 872 suggested "to avoid interruption of the established procedure"); § 601.105(d)(1)(iv) (statutory notice of deficiency will issue if 30–day letter not responded to); I.R.S. Pub. 556 (flow chart of appeal procedure).

**1364**

872–A). In addition, Section 4 of Revenue Procedure 79–22, 1979–1 C.B. 563, states:

.03 Written notification to the Internal Revenue Service from taxpayer(s) of an election to terminate Form 872–A is to be made using Form 872–T.

\* \* \* \* \* \*

.04 Steps taken to terminate Forms 872–A by the Service or the taxpayer(s) other than by using Forms 872–T (e.g., by letter or orally) will not terminate Form 872–A.

This Court has stated, in *dicta,* that requests for termination of the consent given in Form 872–A may be sufficient to terminate if they are clear and specific, even if they do not comply with the requirement that a taxpayer use Form 872–T. *Tapper v. Commissioner,* 766 F.2d 401, 404 (9th Cir.1985). However, the Tax Court subsequently disagreed with that notion, holding in *Roberson v. Commissioner,* ¶ 86–520 P–H Memo T.C. at 2392 (1986), that the *Tapper dicta* does *not* stand for the proposition that a letter containing sufficient information and directed to the proper department is sufficient to terminate a Form 872–A extension and that *Grunwald* was dispositive of the issue. It is unnecessary for us to rule on the *Tapper dicta,* because the taxpayers here do not contend that they made a clear and specific request for termination.

Even if we were to agree with *Tapper* that the use of Form 872–T is not necessary as long as a clear and specific request for termination is provided, the silence maintained by the taxpayers was neither a clear nor a specific indication of an intent to terminate. In addition, silence does not serve the principal purposes for which Form 872–T is designed, namely to inform the Service: (1) of the intent to terminate the period of limitations on assessment; (2) of the kind of tax involved; and (3) of the relevant tax periods. *Grunwald,* 86 T.C. at 89. Since silence is not an acceptable alternative to use of the Form 872–T and since neither the taxpayers nor the Service executed and mailed a Form 872–T, the extension could terminate only by the mailing of a statutory notice of deficiency.

That notice was mailed on March 14, 1983. Thus, by the terms of the agreement, the taxpayers' consent to waive the statute of limitations terminated 90 days after March 14, 1983, and the deficiency notices were timely issued.

Second, even if it were possible to terminate a Form 872–A consent by "mutual assent," there is no indication that there was any mutual assent between the taxpayers and the Service that a notice of deficiency would issue on any specific date. The mere representation in the 30–day letter that, if the taxpayers did not respond within 30 days, the Service would "process" their case is in no way a promise to issue a deficiency notice within any particular period. Although, as the Service acknowledges, "it is likely that a notice of deficiency would ultimately issue when the Service processes a case" (Appellee's Br. at 11), the letter itself did not promise that a deficiency notice would be sent by any particular date, nor did it indicate that the 90–day period referred to in Form 872–A would begin running at the end of the 30 days. Additionally, the Service was not required by statute to issue a notice of deficiency prior to any particular date, as long as it was done sometime within the limitations period or a valid extension thereof. I.R.C. §§ 6501(a), 6501(c)(4).

Finally, policy considerations support a requirement that a Form 872–A waiver can be terminated by a taxpayer only by use of a Form 872–T. As *Tapper* noted, "The I.R.S. must use forms of general application because it receives millions of communications from taxpayers each year." 766 F.2d at 404. And, as *Grunwald* stated, "The very purpose expected to be served by Form 872–T would be frustrated were the parties free to indulge themselves in whatever form of termination might strike their fancy, regardless of the degree of informality chosen." 86 T.C. at 89.

In sum, the Tax Court correctly ruled that the deficiency notices were timely.

## II. WHETHER THE DEFICIENCY IS WITHIN THE SPECIAL LIMITATION

The Tax Court correctly rejected the taxpayers' contention that the deficiency

determination is not within the special restriction on the consent provided by Form 872–A. The restriction allows for the assessment of any deficiency resulting from any adjustment to the taxpayers' "distributive share of any item of income, gain, loss, deduction or credit of" Beech Mountain. The deficiency of $45,495 stems from ascertainment that the taxpayers should have reported income of $15,280 on their 1977 tax return, rather than a loss of $58,408 as their distributable share of Beech Mountain's taxable income or loss. Clearly, the deficiency determination is attributable to the taxpayers' distributive share of income and loss, which are items listed in the restriction contained in the Form 872–A.

The taxpayers argue that the Service's failure to net the partnership gains against its losses on the Treasury Bill transactions for 1977 in making its determination was so "irrational" that it could not be an accurate determination of their distributive share of Beech Mountain's taxable income or loss. As the Tax Court noted, however, even if the determination that the taxpayers should have reported income of $15,280 on the 1977 return, rather than the reported loss of $58,408, is, in fact, "irrational," it is still a determination of the taxpayers' distributive share and, therefore, within the bounds of the Form 872–A limitation. The taxpayers are attempting to argue the merits of their tax liability, an issue which was not properly before the Tax Court. The Tax Court, therefore, correctly ruled only on the issue of whether the Form 872–A limitation encompassed any determination involving distributive share of income and loss, an issue which is easily answered by merely looking at the Form 872–A executed by the parties.

The judgment of the Tax Court is AFFIRMED.