MICHEL, Circuit Judge.
 

 Federal National Mortgage Association (“FNMA”) filed this tax refund action to recover overpayment interest, invoking a statutory “Special Rule” that permits taxpayers to request retroactive application of an Internal Revenue Code provision requiring the Internal Revenue Service (“IRS”) to apply a zero net interest rate to overlapping periods of mutual taxpayer and IRS indebtedness. On the parties’ cross-motions for partial summary judgment, the United States Court of Federal Claims held that FNMA was entitled to the interest it claimed.
 
 Fed. Nat’l Mortgage Ass’n v. United States,
 
 56 Fed.Cl. 228 (2003). The Court of Federal Claims failed to correctly construe the contested statute in accordance with principles of sovereign immunity requiring express waiver. Accordingly, we reverse the judgment in favor of FNMA and remand for fact-finding as discussed herein.
 

 BACKGROUND
 

 Formerly a federal government agency, FNMA is a private, for-profit entity that provides liquidity for mortgage investments. FNMA had a series of tax disputes with the government during the 1980s and early 1990s. One such dispute was resolved in 1994 by the Tax Court, which determined that FNMA had overpaid its 1974 income taxes by $81,760,551 and its 1975 income taxes by $51,691,622.
 
 Fed. Nat’l Mortgage Ass’n v. Commissioner,
 
 No. 21557-86 (T.C. Feb. 23, 1994). The IRS refunded the amounts overpaid, together with overpayment interest, in several installments between August 1994 and November 1996.
 

 Meanwhile, in 1990 and 1992, respectively, FNMA made tax and deficiency interest payments to the IRS as a consequence of income tax underpayments for the 1983 and 1986 tax years. The periods during which the IRS owed FNMA refunds of overpaid tax (for 1974 and 1975) plus overpayment interest overlapped with the periods during which FNMA owed the IRS for the 1983 and 1986 deficiencies. During the periods of overlap, FNMA owed no net tax. A net liability for FNMA arose for each overlap period,
 
 [1]
 
 nonetheless, because the IRS charges taxpayers a higher interest rate on underpayments than it pays in overpayment interest.
 

 
 *1306
 
 Section 6621(d) of the Internal Revenue Code was enacted in 1998 as part of the IRS Restructuring and Reform Act of 1998 (“the RRA”), Pub. L. No. 105-206, 112 Stat. 685 (codified at 26 U.S.C. § 6621(d)). It requires the IRS to apply a zero net interest rate to overlapping periods of mutual indebtedness between a taxpayer and the IRS, as follows:
 

 Elimination of interest on overlapping periods of tax overpayments and underpayments. — To the extent that, for any period, interest is payable under sub-chapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.
 

 26 U.S.C. § 6621(d) (2000).
 
 [2]
 
 This provision applies to interest accrued after the RRA’s July 22, 1998 date of enactment. However, the RRA’s uncodified special rule allows taxpayers to request that a zero net interest rate be applied to pre-July 22, 1998 periods of overlapping mutual indebtedness in some circumstances:
 

 Special Rule. — Subject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment, the amendments made by this section shall apply to interest for periods beginning before the date of the enactment of this Act if the taxpayer—
 

 (A) reasonably identifies and establishes periods of such tax overpayments and underpayments for which the zero rate applies; and
 

 (B) not later than December 31, 1999, requests the Secretary of the Treasury to apply section 6621(d) of the Internal Revenue Code of 1986 ... to such periods.
 

 Pub. L. No. § 105-206, 3301(c)(2), 112 Stat. 685, 741 (1998),
 
 amended by
 
 Pub.L. No. 105-277, § 4002(d), 112 Stat. 2681, 2681-906 (1998). FNMA filed an administrative claim with the IRS pursuant to section 6621(d) and the special rule for the application of a zero net interest rate to the overlapping periods at issue here in December 1999. The IRS disallowed FNMA’s claim on June 7, 2000.
 
 [3]
 
 It cited its Revenue Procedure 99-43, which interprets the special rule as requiring that “both periods of limitation applicable to the tax underpayment and to the tax overpayment ... must have been open on July 22, 1998.” Rev. Proc. 99-43, 1999-47 I.R.B. 579, 1999 WL 1019050. The IRS concluded that the limitations periods for the 1983 and 1986 (underpayment) years had expired.
 
 [4]
 
 It determined, therefore, that FNMA’s claim did not satisfy the requirements of the special rule.
 

 FNMA then filed the present refund action pursuant to 28 U.S.C. § 2411. The parties premised their cross-motions for partial summary judgment on their differing interpretations of the “[sjubject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment” condition in the special rule.
 
 [5]
 
 FNMA argued that
 
 *1307
 
 retroactive application of section 6621(d) via the special rule is available where the limitations period for
 
 either
 
 the overpayment period
 
 or
 
 the underpayment period had not expired as of July 22, 1998. The government argued that the special rale authorizes interest netting for pre-July 22, 1998 periods only if
 
 both
 
 limitations periods had not expired.
 

 In a very careful and thorough opinion, the Court of Federal Claims granted summary judgment in favor of FNMA, holding that “the special rule applies as long as at least one of the applicable statutes of limitations remains open.”
 
 Fed. Nat’l Mortgage,
 
 56 Fed.Cl. at 238. It concluded that “it is impossible to tell from the plain language of the statute” which interpretation Congress intended,
 
 id.
 
 at 234, and discerned no guidance from the “sparse” and “ambiguous” legislative history,
 
 id.
 
 at 237-38. It held that no deference was due- the IRS interpretation set forth in Revenue Procedure 99-43 under
 
 Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
 
 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), or
 
 Skidmore v. Swift & Co.,
 
 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). It found, however, “compelling principles supporting the conclusion” it reached, including “a long-standing rule of statutory construction” that “doubt [in matters of statutory interpretation] be resolved against the government and in favor of the taxpayer” together with “the principle that remedial statutes should be interpreted broadly in order to effectuate congressional goals.”
 
 Fed. Nat’l Mortgage,
 
 56 Fed. Cl. at 239.
 

 This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
 

 DISCUSSION
 

 ‘We review the Court of Federal Claims’ grant of summary judgment without deference.”
 
 Agwiak v. United States,
 
 347 F.3d 1375, 1377 (Fed.Cir.2003).
 

 I.
 

 As the Court of Federal Claims noted, statutory interpretation begins with the language of the statute.
 
 Duncan v. Walker,
 
 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). Here, however, we agree that the language at issue— “[s]ubject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment” — is equally subject to both proffered interpretations, the parties’ efforts to persuade us to the contrary notwithstanding.
 

 We further agree that Revenue Procedure 99-43 is not entitled to
 
 Chevron
 
 deference. The Court of Federal Claims correctly noted that an agency pronouncement not promulgated pursuant to an explicit or implicit congressional delegation of law-making authority is not entitled to deference under
 
 Chevron. Fed. Nat’l Mortgage,
 
 56 Fed. Cl. at 235 (citing
 
 United States v. Mead Corp.,
 
 533 U.S. 218, 229, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001)). The government argues that a revenue procedure qualifies for
 
 Chevron
 
 deference, noting that all IRS “forms of agency interpretation — Treasury Regulations, revenue rulings, and revenue procedures” — are promulgated with a comparable degree of formality and care, and that there is, therefore, no sound basis for distinguishing between Treasury Regulations and other IRS pronouncements.
 
 Cf. United States v. Cleveland Indians Baseball Co.,
 
 
 *1308
 
 532 U.S. 200, 218-20, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) (affording Treasury Regulation “substantial judicial deference”). As the Court of Federal Claims observed, however, “the issue is not whether the IRS voluntarily subjected Revenue Procedure 99-43 ... to a measure of formalized review[, but] whether Congress intended for the IRS to do so.”
 
 Fed. Nat’l Mortgage,
 
 56 Fed. Cl. at 236. Furthermore, the IRS’ limited solicitation of public comment did not extend to the statute of limitations issue.
 
 [6]
 

 The government notes that we have left undecided the question of whether revenue rulings are “entitled to
 
 Chevron
 
 deference in accordance with”
 
 Mead. Am. Mut. Life Ins. Co. v. United States,
 
 267 F.3d 1344, 1352-53 n. 3 (Fed.Cir.2001). Even assuming, however, that revenue rulings may, in some circumstances, qualify for deference under
 
 Chevron,
 
 the pronouncement at issue here is a revenue procedure, not a revenue ruling. The government asks that we ignore the distinction between the two, but the distinction is of the IRS’ own making. As the Court of Federal Claims noted, Treasury Regulations define a revenue ruling as “an official interpretation by the [IRS] ... published for the information and guidance of taxpayers, [IRS] officials, and others concerned.” 26 C.F.R. § 601.601(d)(2)(i)(a) (2004). A revenue procedure is defined as a “statement of procedure that affects the rights or duties of taxpayers or other members of the public under the Code and related statutes or information that, although not necessarily affecting the rights and duties of the public, should be a matter of public knowledge.”
 
 Id.
 
 § 601.601(d)(2)(i)(b). We need not decide, however, whether there is any distinction of significance between revenue rulings and revenue procedures for purposes of
 
 Chevron
 
 deference. The revenue procedure at issue here contains no analysis of text or legislative history or any other relevant interpretive guidance. It neither elucidates nor invokes support for its conclusion that “both periods of limitation applicable to the tax underpayment and to the tax overpayment ... must have been open on July 22, 1998.” 1999-47 I.R.B. at 580. We agree with the Court of Federal Claims, therefore, that it is of the nature of an enforcement guideline — not a legislative-like interpretation — and thus ineligible for
 
 Chevron
 
 treatment.
 
 See Mead,
 
 533 U.S. at 234, 121 S.Ct. 2164 (holding that Customs “classification rulings are best treated like ‘interpretations contained in policy statements, agency manuals, and enforcement guidelines’ [that are] beyond the
 
 Chevron
 
 pale.” (quoting
 
 Christensen v. Harris County,
 
 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000))).
 

 Mead
 
 reaffirmed, however, that, even where
 
 Chevron
 
 is inapplicable, an agency pronouncement “may merit some deference whatever its form, given the ‘specialized experience and broader investigations and information’ available to the agency.”
 
 Id.
 
 (quoting
 
 Skidmore,
 
 323 U.S. at 139, 65 S.Ct. 161). The extent to which such deference is accorded a given agency pronouncement “depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to
 
 *1309
 
 persuade.”
 
 Skidmore,
 
 323 U.S. at 140, 65 S.Ct. 161.
 

 As noted above, however, Revenue Procedure 99-43 sets forth no reasoning in support of its conclusion regarding the introductory language of the special rule. Furthermore, as a “recent pronouncement implementing a new statute with no precedent in the tax laws,”
 
 Fed. Nat’l Mortgage,
 
 56 Fed. Cl. at 237, it is not entitled to the great weight given settled agency interpretations of long vintage.
 
 Cf. Cleveland Indians Baseball,
 
 532 U.S. at 220, 121 S.Ct. 1433 (deferring to the IRS’ “steady interpretation of its own 61-year-old regulation implementing a 62-year-old statute”). Nor was it highly contemporaneous. Rather, the revenue procedure at issue here was promulgated 16 months after the special rule’s enactment. In any event, its conclusion regarding the requirement for open periods of limitation is unaccompanied by any supporting rationale. Accordingly, the revenue procedure does not provide a basis for resolving the present appeal.
 

 II.
 

 We find limited guidance in the legislative history. The original bill (H.R. 2676) authorized interest netting for overlapping overpayment and underpayment periods on a prospective basis only.
 
 See
 
 H.R.Rep. No. 105-364(I), at 21 (1997). The special rule authorizing interest netting for past periods was added by a Senate floor amendment that was accepted without modification by the Conference Committee. The Conference Report does little more than restate the special rule, in equally ambiguous terms. In relevant part, it states: “the [interest netting] provision applies to interest for periods beginning before the date of enactment if ... the statute of limitations has not expired with respect to either the underpayment or overpayment-....” H.R. Conf. Rep. No. 105-599, at 257 (1998). Thus, we agree with the Court of Federal Claims that the language of the Conference Report is equally susceptible to either of the interpretations advanced by the parties.
 

 The government urges, however, that we look for insight into the intent of Congress in the General Explanation of Tax Legislation Enacted in 1998, prepared by the Joint Committee on Taxation, November 24, 1998 (the “Blue Book”). According to the Blue Book explanation relevant to the special rule:
 

 [t]he provision affects the determination of interest for periods beginning after the date of enactment (after July 22, 1998). In addition, the provision applies to the determination of interest for periods beginning before the date of enactment if: (1) as of the date of enactment, a statute of limitations has not expired with respect to the underpayment or overpayment; (2) the taxpayer identifies the periods of underpayment and overpayment for which the zero rate applies; and (3) on or before December 31, 1999, the taxpayer asks the Secretary to apply the zero rate.
 
 A statute of limitations must not have expired as of the date of enactment with respect to both the underpayment and overpayment for the provision to apply.
 

 (emphasis added). As a post-enactment explanation, the Blue Book interpretation is entitled to little weight.
 
 Jones v. United States,
 
 526 U.S. 227, 238, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). Nonetheless, we note that the only relevant contemporaneous interpretation available is inconsistent with the judgment in FNMA’s favor.
 
 See Principal Mut. Life Ins. Co. v. United States,
 
 295 F.3d 1241, 1247 (Fed. Cir.2002) (finding interpretive guidance in committee reports “prepared contemporaneously with the consideration and enactment of’ the statute at issue).
 

 
 *1310
 
 III.
 

 As discussed above, the Court of Federal Claims relied on certain principles of statutory construction to choose between the parties’ conflicting interpretations of the special rule. It did not discuss, however, what we regard as the most significant construction principle applicable to the present dispute: the requirement that a sovereign immunity waiver be strictly construed.
 
 [7]
 

 See Library of Congress v. Shaw,
 
 478 U.S. 310, 315, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (noting the courts’ obligation to “not enlarge” a statutory waiver of immunity “ ‘beyond what the language requires’ ” (quoting
 
 E. Transp. Co. v. United States,
 
 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472 (1927))). FNMA contends that sovereign immunity principles are irrelevant here because the special rule concerns only the
 
 rate
 
 at which the government pays overpayment interest (i.e., the usual rate or a higher rate such that the net rate for the overlap period is zero), not whether it pays interest at all. Br. for Appellee at 57 (citing
 
 J.F. Shea Co. v. United States,
 
 754 F.2d 338 (Fed.Cir.1985)). At issue in
 
 Shea
 
 was a standard clause in a government contract that provided for the payment of interest on contractor claims “at the rate determined by the Secretary of the Treasury . . . .”
 
 Shea,
 
 754 F.2d at 339. The dispute concerned whether interest owed the contractor should be calculated using a fixed rate or a variable rate.
 
 Id.
 
 We rejected the government’s invocation of the sovereign immunity doctrine, stating “it is irrelevant here, where the dispute concerns not
 
 whether
 
 interest runs against the United States but
 
 how
 
 the interest is to be calculated.”
 
 Id.
 
 at 340 (emphasis in original). The special rule is different, however, from the contract clause in
 
 She a.
 
 It authorizes claims against the government to recover interest paid, if the taxpayer satisfies certain specified conditions (i.e., “reasonably identifies” the periods in question and files its request by the date stated), for certain pre-enactment periods, namely those pre-enactment periods that satisfy the condition expressed in the “[sjubject to any applicable statute of limitation not having expired ...” introductory language. In other words, the disputed language in the special rule does not, as FNMA asserts, merely relate to the rate of interest the government must pay. Rather, it discriminates between those claims for overpaid interest Congress has authorized and those it has not. Contrary to FNMA’s assertion, therefore, it is a waiver of sovereign immunity, and, moreover, one expressly made conditional.
 
 See United States v. Testan,
 
 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (“[T]he United States, as sovereign, ‘is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court’s jurisdiction to entertain the suit.’ ” (quoting
 
 United States v. Sherwood,
 
 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941))).
 

 The issue here concerns the limits of the condition set forth in the special rule’s preface: the requirement that certain periods of limitations be open as of July 22, 1998. Such time bars, when they condition recovery from the government, are strictly construed.
 
 See United States v. Dalm,
 
 494 U.S. 596, 608-09, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (“ ‘[Although we should not construe ... a time-bar provision unduly restrictively, we must be careful not to interpret it in a manner that would “extend the waiver beyond that which Congress intended.” ’ ” (quoting
 
 *1311
 

 Block v. North Dakota,
 
 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (quoting
 
 United States v. Kubrick,
 
 444 U.S. 111, 117-18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)))).
 

 Here, the implication of these principles is clear. As discussed above, the language at issue is ambiguous, subject to two conflicting interpretations. A waiver to the extent urged by FNMA, i.e., as to claims for overlapping indebtedness periods for which either the overpayment or the underpayment limitations period remains open, has, therefore, not been “unequivocally expressed,” as is essential to its recovery here.
 
 United States v. King,
 
 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (“We think that this approach runs counter to the settled propositions that the Court of Claims’ jurisdiction to grant relief depends wholly upon the extent to which the United States has waived its sovereign immunity to suit and that such a waiver cannot be implied but must be unequivocally expressed.”). Accordingly, to the extent the government is correct that both limitations periods — i.e., for the underpayments and the overpayments — were closed on July 22, 1998, the Court of Federal Claims lacked jurisdiction to entertain FNMA’s claim or at least its “jurisdiction to grant relief.”
 
 [8]
 

 Id.
 
 We reverse, therefore, the grant of partial summary judgment in favor of FNMA, and remand only for a factual determination regarding whether the statute of limitations for the 1983 underpayment year was closed on July 22,1998.
 

 REVERSED AND REMANDED.
 

 COSTS
 

 Nó costs.
 

 [1]
 

 . A net liability of approximately $4,940,328 arose during the overlap of the 1983 underpayments and the 1974 overpayments. A net liability of approximately $5,588,173 arose during the overlap of the 1986 underpayments and the 1974 and 1975 overpayments.
 

 [2]
 

 . Subchapters A and B of the Internal Revenue Code relate to interest on underpayments and overpayments of tax, respectively.
 
 See
 
 26 U.S.C. §§ 6601, 6611.
 

 [3]
 

 . The IRS issued a corrected notice of disallowance on July 20, 2000.
 

 [4]
 

 . A claim for credit or refund of paid underpayment interest is barred if not filed within the later of three years from the date the return was filed or two years from the date the interest was paid. 26 U.S.C. § 6511.
 

 [5]
 

 . According to the trial court, FNMA disputed the government’s conclusion that the statute of limitations for the 1983 underpayment year was closed on July 22, 1998.
 
 Fed. Nat’l Mortgage,
 
 56 Fed.Cl. at 230 n. 5 (noting that its grant of summary judgment in FNMA’s favor
 
 *1307
 
 mooted the factual dispute). In light of our disposition, below, that issue is no longer moot.
 

 [6]
 

 . The IRS requested comments
 

 regarding the level of specificity necessary to reasonably identify and establish on or before December 31, 1999, the period(s) for which an equivalent amount of overpayment and underpayment of tax overlap when the taxpayer cannot provide by December 31, 1999, a final computation of how the net interest rate of zero applies to interest accruing before October 1, 1998.
 

 Rev. Proc. 99-19, 1999-13 I.R.B. 12, 1999 WL 138793.
 

 [7]
 

 . The government did not include a sovereign immunity argument in its motion papers. Nonetheless, because sovereign immunity, to the extent applicable, limits a court's authority to grant relief or even adjudicate, we are obliged to consider its applicability.
 

 [8]
 

 . Because it affects such jurisdiction here, sovereign immunity assumes primacy over any other tools or principles of statutory construction and obviates the need for further consideration of the bases for the decision of the Court of Federal Claims.
 
 See Marathon Oil Co. v. United States,
 
 374 F.3d 1123, 1139-40 (Fed.Cir.2004) (noting that "the legislative history of [an ambiguous waiver statute] is legally irrelevant: If Congress has left us with an ambiguous statute, no waiver of sovereign immunity can be found, regardless of what Congress may or may not have intended as a purpose for its statute”).