# United States Court of Appeals for the Federal Circuit

06-5055

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Alan I. Horowitz, Miller & Chevalier, Chartered, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Thomas D. Johnston and Laurie A. Barber.

Ellen Page Delsole, Attorney, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Eileen J. O'Connor, Assistant Attorney General, Richard T. Morrison, Deputy Assistant Attorney General, and Richard Farber, Attorney.

Appealed from: United States Court of Federal Claims

Senior Judge John P. Wiese

# United States Court of Appeals for the Federal Circuit

06-5055

FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  November 13, 2006

_____

Before MICHEL, <u>Chief Judge</u>, DYK and PROST, <u>Circuit Judges</u>.

DYK, <u>Circuit Judge</u>.

This is the second time this case has come before this court.  This case involves a claim for interest netting under § 6621(d) of the Internal Revenue Code.  26 U.S.C. § 6621(d) (2000).  The Federal National Mortgage Association ("FNMA") asserts that it is entitled to a refund of interest paid by the taxpayer to the Internal Revenue Service ("IRS") based on the theory that mutual indebtedness of the taxpayer and the IRS for different tax years should be netted against each other with the result that the taxpayer was not liable for interest.  The government defends on the ground that the interest netting provision is inapplicable.

When this case was previously before this court we held that, to qualify for interest netting, the taxpayer must demonstrate that the statute of limitations was open

with respect to both overpayments and underpayments on the date that § 6621(d) became effective (July 22, 1998). Fed. Nat'l Mortgage Ass'n v. United States, 379 F.3d 1303, 1311 (Fed. Cir. 2004). We remanded "only for a factual determination regarding whether the statute of limitations for the 1983 underpayment year was closed on July 22, 1998." Id.

On remand, the Court of Federal Claims granted summary judgment in favor of the United States because it found that the statute of limitations for FNMA's 1983 tax year had expired before July 22, 1998. Fed. Nat'l Mortgage Ass'n v. United States, 69 Fed. Cl. 89, 95 (2005). Because we agree that the statute of limitations for FNMA's 1983 tax year expired before July 22, 1998, we affirm.

BACKGROUND

Section 6621 of the Internal Revenue Code generally requires taxpayers to pay a higher interest rate on tax underpayments than it requires the IRS to pay to taxpayers on overpayments. See 26 U.S.C. § 6621(a)(1)(B), (c)(1) (2000). In 1998 Congress amended § 6621 as part of the Restructuring and Reform Act of 1998, Pub. L. No. 105-206, 112, to require interest netting. 26 U.S.C. § 6621(d). Under § 6621(d), a zero-net interest rate applies when there are underpayments and overpayments by the same taxpayer for overlapping tax periods. In addition to applying prospectively from July 22, 1998, an uncodified "special rule" governs interest netting for tax years before 1998 and provides that interest netting is only available if the statutes of limitations remain open. In other words, it is "[s]ubject to any applicable statute of limitation not having expired [by July 22, 1998] with regard to either a tax underpayment or a tax overpayment." Pub.

L. No. 105-206, § 3301(c)(2), 112 Stat. 685, 741 (1998), amended by Pub. L. No. 105-277, § 4002(d), 112 Stat. 2681, 2681-906-07 (1998).

In 1990 and 1992, respectively, FNMA made tax and interest payments to the IRS to satisfy deficiencies for tax years 1983 and 1986, paying interest at the underpayment rate. In 1994, pursuant to a Tax Court decision, the IRS refunded nearly $309 million in overpayment tax and interest for tax years 1974 and 1975, paying interest at the overpayment rate. See Fed. Nat'l Mortgage Ass'n v. Comm'r, 100 T.C. 541 (1993). On December 29, 1999, after the 1998 amendment to § 6621, FNMA filed an administrative claim with the IRS for application of the zero-net interest rate and identified overlapping periods of overpayment for 1974 and 1975 and periods of underpayment for 1983 and 1986. On June 7, 2000, the IRS denied the request reasoning that "the statute of limitations for refund must be open on July 22, 1998 on both the overpayment and underpayment periods. The statutes for tax periods December 31, 1983 and December 31, 1986 [have] expired."

FNMA then filed a refund action pursuant to 28 U.S.C. § 2411 (2000) in the United States Court of Federal Claims. Fed. Nat'l Mortgage Ass'n v. United States, 56 Fed. Cl. 228 (2003). FNMA argued that the special rule only requires an open statute of limitations for either the overpayment tax period or the underpayment tax period, but does not require that the statutes of limitations remain open for both. The Court of Federal Claims agreed and granted summary judgment in favor of FNMA. Id. at 239. On appeal, we reversed because the Court of Federal Claims lacked "jurisdiction to grant relief" under § 6621 and held that the special rule for § 6621 does not apply unless the taxpayer demonstrates that the statute of limitations was open for both the

overpayment and underpayment years.  Fed. Nat'l Mortgage Ass'n, 379 F.3d at 1311;

see also Computervision Corp. v. United States, 445 F.3d 1355, 1373-74 (Fed. Cir.

2006) (reaffirming our decision in Federal Nat'l Mortgage Ass'n).  Because the parties

had stipulated that the statute of limitations was open for the overpayment tax years

1974 and 1975 and the statute of limitations was closed for the underpayment tax year

1986, thus barring an interest netting claim on the basis of the 1986 tax year, we

remanded "only for a factual determination regarding whether the statute of limitations

for the 1983 underpayment year was closed on July 22, 1998."  Fed. Nat'l Mortgage

Ass'n, 379 F.3d at 1311.

In view of the limited nature of our remand, we confine our discussion of the

background facts to tax year 1983 and to the question of "whether the statute of

limitations for the 1983 underpayment year was closed on July 22, 1998."  Id.  FNMA

filed its federal income tax return for the 1983 tax year on or before September 15,

1984.  After the IRS audited the 1983 return, it entered into a series of Form 872

(Consent to Extend the Time to Assess Tax) agreements with FNMA that extended the

statute of limitations for assessment of tax until March 15, 1989.  In November 1988, the

parties executed a Form 872-A (Special Consent to Extend the Time to Assess Tax),

which extended the statute of limitations for assessment until the occurrence of certain

specified events.  The first paragraph of Form 872-A provided that the limitations period

for assessment remains open until the 90th day after:  (a) the IRS "receives Form 872-

T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the

taxpayer"; (b) the IRS mails the taxpayer a Form 872-T; or (c) the IRS "mails a notice of

deficiency to the taxpayer[]."  The second paragraph of Form 872-A provided:  "This

agreement ends on the earlier of the above expiration date or the assessment date of an increase in the above tax or the overassessment date of a decrease in the above tax that reflects the final determination of tax and the final administrative appeals consideration." Under § 6511(c), the Form 872-A agreement also extended the deadline for FNMA to file a refund claim until six months after the "expiration of the period within which an assessment may be made pursuant to the [Form 872-A] agreement." 26 U.S.C. § 6511(c)(1); see also Form 872-A, ¶ 4 ("The taxpayer(s) may file a claim for credit or refund and the Service may credit or refund the tax within 6 (six) months after this agreement ends.").

On December 14, 1990, the parties executed a Form 870-AD (Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment) settlement agreement in which FNMA consented to a proposed deficiency of $59,493,854 in tax and $66,698,615 in interest for tax year 1983. FNMA paid the deficiency on December 31, 1990. In the Form 870-AD, FNMA reserved "the right to timely file claims for refund or credit or prosecute timely filed claims solely on" three grounds, each of which related to a Tax Court proceeding concerning other taxable years. In essence, the parties agreed in the first reservation that if the Tax Court proceeding was ultimately resolved favorably to the taxpayer, the IRS would allow a refund for the tax year 1983. The applicable condition stated: "If the decision of the Tax Court upholding the taxpayer's position regarding the concurrent mortgage sale issue becomes final under I.R.C. Section 7481, gross income for 1983 does not include the purchase discount amortization of $172,467." After the execution of Form 870-AD, the IRS sent FNMA a letter stating that it had "closed this case on the basis agreed

upon and [was] sending the case file to the service center." Along with the letter, the IRS enclosed an executed Closing Agreement (Form 906) that recited the terms of the settlement.

The Tax Court's decision concerning the first reserved issue became final in 1994 and was favorable to the taxpayer. On June 6, 1994, FNMA filed an amended 1983 tax return seeking a refund of $79,335. On May 1, 1995, the IRS sent FNMA a check for $223,187.82, reflecting the full refund amount plus interest accrued since 1983.

On remand, in a careful opinion the Court of Federal Claims found that, following the Forms 872-A and 870-AD, the only issue left open was the possibility of securing a refund for the 1983 tax year. Fed. Nat'l Mortgage Ass'n, 69 Fed. Cl. at 93. The court rejected FNMA's argument that Form 872-A "restricts termination of the extension to specific, identifiable events" because the second paragraph of Form 872-A "looks beyond the clear notice concept of paragraph one and requires instead an assessment of the parties' conduct." Id. at 94. The court noted that the language of the Form 870-AD and the taxpayer's limited reservations "express[] a mutual commitment to accept [] the final determination of plaintiff's 1983 income tax liability" in accordance with the specifications of the reservations. Id. Thus, the court concluded that "the issuance of a refund check in the claimed amount corresponds to the final determination and appeals consideration for plaintiff's 1983 taxable year and, accordingly, brings to a close, 90 days after the date of refund, the period for the assessment of tax as contemplated by Form 872-A." Id. at 93-94. Accordingly, the court granted summary judgment in favor of the government. Id. at 95. FNMA timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3) (2000).

DISCUSSION

I

FNMA first argues that this court should reconsider its decision in <u>Fed. Nat'l Mortgage Ass'n v. United States</u>, 379 F.3d 1303 (Fed. Cir. 2004) ("<u>FNMA I</u>"), that the special rule requires an open statute of limitations for both the overpayment and underpayment tax periods. In <u>FNMA I</u>, this court held that the zero-netting provision is jurisdictional and a waiver of sovereign immunity because "the disputed language in the special rule does not . . . merely relate to the rate of interest the government must pay. Rather, it discriminates between those claims for overpaid interest Congress has authorized and those it has not. . . . [T]herefore, it is a waiver of sovereign immunity, and, moreover, one expressly made conditional." <u>Id.</u> at 1310. As "the language at issue [in the special rule] is ambiguous," we strictly construed the special rule in favor of the government to require that FNMA demonstrate that the statute of limitations was open for both the overpayment and the underpayment tax years. <u>Id.</u> at 1311.

In <u>Computervision Corp.</u>, 445 F.3d at 1373, we reaffirmed that "[i]n <u>FNMA</u>, we interpreted [the special rule's] language to require that the statute of limitations must be open with respect to both the underpayment and the overpayment." Because the statute of limitations was closed for both of Computervision's tax years, we held that Computervision's "claim for interest netting fails to satisfy the requirements for retroactive application of the statute." <u>Id.</u> at 1374. In a Supplemental Opinion on Petition for Rehearing, we again held that "under our decision in <u>FNMA</u>, both the overpayment and underpayment limitations period must remain open on July 22, 1998,

in order for the interest netting statute to apply retroactively." <u>Computervision Corp. v. United States</u>, -- F.3d --, 2006 WL 2505690, at *2 (Fed. Cir. Aug. 30, 2006).

"A panel of this court is bound by prior precedential decisions unless and until overturned <u>en banc</u>." <u>Sacco v. Dep't of Justice</u>, 317 F.3d 1384, 1386 (Fed. Cir. 2003). Nonetheless, FNMA argues that we must reconsider <u>FNMA I</u> in light of the Supreme Court's intervening decision in <u>Arbaugh v. Y & H Corp.</u>, 126 S. Ct. 1235 (2006), and our intervening <u>en banc</u> decision in <u>Fisher v. United States</u>, 402 F.3d 1167 (Fed. Cir. 2005) (en banc in relevant part). FNMA argues that, under <u>Arbaugh</u> and <u>Fisher</u>, the special rule is not jurisdictional and, therefore, we should not adhere to our supposedly flawed analysis in <u>FNMA I</u>. We do not read <u>Arbaugh</u> or <u>Fisher</u> to warrant reconsidering <u>FNMA I</u>. In <u>FNMA I</u>, we characterized the special rule as "jurisdictional," holding that it represented a waiver of sovereign immunity that must be strictly construed. FNMA urges that the special rule is not jurisdictional, relying on <u>Arbaugh</u> and <u>Fisher</u> as setting forth new standards for determining when a statutory provision is jurisdictional. These cases are not pertinent because they do not address whether, in cases against the government, limitations periods are jurisdictional or whether they must be strictly construed. The Supreme Court in <u>Arbaugh</u> held that the provision of Title VII that limits the term "employer" to those having "fifteen or more employees" was not jurisdictional. 126 S. Ct. at 1238-39; <u>see also</u> 42 U.S.C. § 2000e(b) (2000). Likewise, our <u>en banc</u> decision in <u>Fisher</u> addressed the standard for determining whether a statute is "money mandating," thus conferring jurisdiction under the Tucker Act, but did not consider limitations. <u>See Fisher</u>, 402 F.3d at 1173.

The decision in FNMA I that the statute of limitations is jurisdictional and must be strictly construed applies a well established principle supported by a long line of Supreme Court cases. The Supreme Court has repeatedly stated that "[u]nder settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Dalm, 494 U.S. 596, 608 (1990) (quoting United States v. Testan, 424 U.S. 392, 399 (1976)); sea also United States v. Sherwood, 312 U.S. 584, 586 (1941). The Supreme Court in Dalm concluded further that "[a] statute of limitations requiring that a suit against the Government be brought within a certain time period is one of those terms" that defines the court's jurisdiction. Dalm, 494 U.S. at 608; see also United States v. Mottaz, 476 U.S. 834, 841 (1986) ("In particular, when waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." (internal quotation omitted)). Thus, the Supreme Court has consistently held that statutes of limitations must be strictly construed in favor of the government. See e.g., Dalm, 494 U.S. at 608; Badaracco v. Comm'r, 464 U.S. 386, 391 (1984) ("Statute[s] of limitations . . . must receive a strict construction in favor of the Government." (internal quotation omitted)); E. I. Dupont de Nemours & Co. v. Davis, 264 U.S. 456, 462 (1924) ("Statutes of limitation sought to be applied to bar rights of the government, must receive a strict construction in favor of the government."). The special rule is a statute of limitations and must be strictly construed. We see no reason to reconsider either FNMA I or our decision reaffirming it in Computervision, even if we had authority to do so.

II

The more difficult question concerns FNMA's argument that the statute of limitations for the 1983 tax year had not run by July 22, 1998. Our decisions in FNMA I and Computervision did not explore at length the question of when a statute of limitations for a particular year will have "expired," though we held in Computervision that the filing of a refund suit did not extend the limitations period as required by the statute. Computervision Corp., 445 F.3d at 1374; Computervision Corp., -- F.3d --, 2006 WL 2505690 at *2. We assume without deciding that if the statute of limitations remains open by agreement for any relevant purpose (other than claims of fraud or misrepresentation), no matter how limited, the statute will not have expired within the meaning of the special rule. The parties appear to agree that the limitations period for additional deficiency assessments or refunds for the 1983 tax year would have expired long before 1998 were it not for extensions of time. The sole issue therefore is whether those extension agreements kept the limitations period open until 1998 for further deficiency assessments or refunds.

FNMA filed its federal income tax return for 1983 on or before September 15, 1984. As noted above, the IRS entered into a series of Form 872 agreements with FNMA to extend the statute of limitations for assessment until March 15, 1989. In November 1988 the parties executed a Form 872-A agreement extending the limitations period for assessment until certain events occurred.

The history of Form 872-A manifests concern over the need for clarity in terminating waivers of statutes of limitations. The IRS began using Form 872-A in 1971, but at that time the agreement could only be terminated when the IRS mailed a

"notification of termination of Appeals office consideration" or upon "receipt by Appeals of notification by the taxpayer of election to terminate the agreement." See I.R.S. Field Serv. Advice WTA-N-254063-96, 1997 FSA LEXIS 213 at *14. In 1979, to address problems interpreting the "notification of termination" requirement, the IRS modified the first paragraph of 872-A to "provide that notification of intent to terminate the indefinite extension was to be made on a specific document, Form 872-T." Id. at *15n.5. The same year, the language of the second paragraph was added to Form 872-A to address a Government Accounting Office recommendation that the IRS add a statement that "the waiver period will end on the agreed date or after assessment, whichever comes first." Id. at *14.

Here the first paragraph of Form 872-A provided that the limitations period would remain open until the 90th day after: (a) the IRS "receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer[]"; (b) the IRS mails the taxpayer a Form 872-T; or (c) the IRS "mails a notice of deficiency" to the taxpayer. The second paragraph of Form 872-A provided: "This agreement ends on the earlier of the above expiration date or the assessment date of an increase in the above tax or the overassessment date of a decrease in the above tax that reflects the final determination of tax and the final administrative appeals consideration."

The parties agree that the first paragraph of Form 872-A is inapplicable here; neither party has sent a Form 872-T terminating the limitations period nor has the IRS issued a notice of deficiency for 1983. The question is whether the conditions of the second paragraph occurred such that the agreement terminated and the statute of limitations expired thereafter.

FNMA argues that courts have repeatedly held various forms of notice, other than the specific Form 872-T, were insufficient to terminate the Form 872A agreement. However, the cases on which the taxpayer relies in this respect all involve the first paragraph of Form 872-A. FNMA relies particularly on the First Circuit's decision in Silverman v. Commissioner, 86 F.3d 260 (1st Cir. 1996). In Silverman, the taxpayers entered into a Form 872-A agreement with the IRS. Thereafter, they entered into a Form 906 "Closing Agreement" that bound them to the outcome of a Tax Court case relating to a similar tax issue. The Form 906 authorized the IRS to assess a deficiency within one year after the Tax Court decision became final. The Tax Court ruling became final in 1991. Two years later, the taxpayers sent the IRS Forms 872-T. Ninety days after receiving the Forms, the IRS sent the taxpayers deficiency notices for the years in question. The taxpayers promptly initiated a Tax Court proceeding claiming that the statute of limitations for assessing the deficiency terminated under the Closing Agreement one year after the Tax Court decision became final. While the facts of Silverman are analogous to this case, the First Circuit solely addressed the language in the first paragraph of Form 872-A. The court stated that "[a] plain need for certainty prompted [the] IRS to devise Form 872-T as the exclusive means, apart from mailing a deficiency notice, for either the IRS or taxpayers to terminate a Form 872-A consent to extend a limitation period." Id. at 262. The court then held that Form 872-A was not terminated when the taxpayers and IRS entered into the Closing Agreement. Id. In reaching this decision, the First Circuit stated that "we adhere to the plain language of Forms 872-A and 872-T . . . in holding that the Form 906 closing agreement did not terminate these Form 872-A extensions." Id. at 262; see also DeSantis v. United

<u>States</u>, 783 F. Supp. 165, 169 (S.D.N.Y. 1992) (considering facts similar to <u>Silverman</u> and addressing only the first paragraph of Form 872-A).

The Ninth Circuit cases on which FNMA relies are even less pertinent. They are both factually distinguishable and also consider only the first paragraph of Form 872-A. <u>See</u> <u>Kernen v. Comm'r</u>, 902 F.2d 17, 18 (9th Cir. 1990) (holding that the taxpayers' execution of Form 872 - which extends the limitations period to a date certain - did not end the indefinite limitations period under Form 872-A because Form 872 is not listed in the first paragraph of Form 872-A); <u>Kinsey v. Comm'r</u>, 859 F.2d 1361, 1363 (9th Cir. 1988) (stating that "Form 872-A expressly provides for three ways in which consent can be terminated" and holding that the taxpayer's failure to respond to a "30-day letter" "does not comply with any of them"). The Tax Court's decisions cited by FNMA also rest on a finding that the conditions of the first paragraph of Form 872-A were not met. <u>See</u> <u>Grunwald v. Comm'r</u>, 86 T.C. 85, 89 (1986) ("The relevant waiver for the years in question which petitioners signed and which respondent accepted expressly and explicitly sets out the three methods by which the period of limitations could be terminated, and a letter of the type sent by the Appeals Officer was not one of these."); <u>Duncan v. Comm'r</u>, 56 T.C.M. (CCH) 1073 (1989) (holding that an improperly issued notice of deficiency "cannot reasonably be considered a notice of deficiency for Form 872-A purposes"); <u>Podell v. Comm'r</u>, 52 T.C.M. (CCH) 1364 (1987) (holding that execution of Form 872 did not terminate an earlier Form 872-A); <u>Myers v. Comm'r</u>, 52 T.C.M. (CCH) 841, *8 (1986) ("The letters from petitioners' counsel are not Forms 872-T and thus did not terminate petitioners' consent to extend the period of assessment of tax."); <u>see also</u> Rev. Proc. 79-22, 1979-1 C.B. 563 ("With the exception of the mailing of

a notice of deficiency, written notification by the Service to the taxpayer(s) of termination of Service consideration can only be made using Form 872-T."). Accordingly, this authority is inapplicable here.

To the extent that the taxpayer suggests that Form 872-A was designed to provide clear notice, and that the second paragraph should only apply where the termination is clear, we agree. In this respect the issue is whether, under the second paragraph of Form 872-A, there has been an "assessment date of an increase in . . . tax or the overassessment date of a decrease in . . . tax that reflects the final determination of tax and the final administrative appeals consideration." That requires us to consider the Form 870-AD settlement agreement executed by the parties on December 14, 1990. The settlement was the result of an IRS audit of FNMA's tax year 1983 and the November 1988 issuance of a revenue agent's report asserting that FNMA owed additional tax. In the Form 870-AD settlement agreement signed thereafter, FNMA consented to "the assessment and collection of the following deficiencies": $59,493,854 of tax and $66,698,615 of interest. An unconditional Form 870-AD is plainly a "final determination" within the meaning of Form 872-A. See Mobil Corp. v. United States, 52 Fed. Cl. 327, 339 (2002) (holding that a Form 872-A was terminated because there was "a final determination of tax" where the parties executed an 870-AD agreement); Lowenstein v. United States, 27 Fed. Cl. 38, 51 (1992) (holding that an unconditional Form 870-AD agreement was "a final determination of tax" under Form 872-A). Here, however, the Form 870-AD included reservations.

On the Form 870-AD, FNMA reserved "the right to timely file claims for refund or credit or prosecute timely filed claims solely on" three grounds:

(1)     If the decision of the Tax Court upholding the taxpayer's position regarding the concurrent mortgage sale issue becomes final under I.R.C. Section 7481, gross income for 1983 does not include the purchase discount amortization of $172,467.

(2)     If the decision of the Tax Court upholding the taxpayer's position regarding the concurrent mortgage sale issue is reversed by the U.S. Supreme Court, gross income for 1983 does not include the purchase discount amortization of $18,306,685.

(3)     To the extent that the character, timing or amount of the hedging losses in issue for 1984 and 1985 are in any respect affected by a decision of the Tax Court that becomes final under I.R.C. Section 7481, the taxpayer is entitled to reflect the treatment of $8,746,914 of its hedging gains reported for 1983 on the same basis.[1]

FNMA argues that because of these reservations Form 870-AD was only a "partial agreement" which did not terminate Form 872-A, because it left some issues open for the 1983 tax year. FNMA points out that Form 872-A expressly provided that "[s]ome assessments do not reflect a final determination and appeals consideration and therefore will not terminate the agreement before the expiration date. Examples are assessments of: (a) tax under a partial agreement." While the Form 870-AD agreement was a "partial

---

[1]     We note that in addition to FNMA's specifically reserved issues, Form 870-AD includes a number of other reservations:

If this offer is accepted for the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, an important mistake in mathematical calculation, deficiencies or overassessments resulting from adjustments made under Subchapters C and D of Chapter 63 concerning the tax treatment of partnership and subchapter S items determined at the partnership and corporate level, or excessive tentative allowances of carrybacks provided by law; and no claim for refund or credit shall be filed or prosecuted for the year(s) stated above other than for amounts attributed to carrybacks provided by law.

There is no contention that this language serves to keep the statute of limitations open indefinitely under Form 872-A.

agreement" and was not itself a "final determination," [2] we find that the Form 870-AD agreement together with resolution of the reserved issues did constitute a final determination under Form 872-A.

FNMA does not contend that the second and third reservations serve to keep the statute of limitations for 1983 open. The conditions of those reservations were never triggered, and they expired before 1998. FNMA instead argues that the first reserved issue kept the extension of the statute of limitations open for tax year 1983. Under the first reserved condition, when FNMA signed the 870-AD settlement agreement, it reserved the right to file a refund on the "concurrent mortgage sale issue" when a Tax Court decision on that issue (concerning another tax year) became final. Once that decision became final in 1994, under the reservation, FNMA could only file a refund claim on the ground that "gross income for 1983 does not include the purchase discount amortization of $172,467." On June 6, 1994, FNMA filed an amended 1983 tax return seeking a refund of $79,335 under the first reserved issue. As FNMA correctly urges, under the Form 870-AD agreement the IRS could not dispute FNMA's proposed adjustment to gross income (since that adjustment had been specified in the Form 870-AD reservation), but it could dispute the calculation of the refund amount. However, on May 1, 1995, the IRS sent FNMA a check for $223,187.82, reflecting the full refund amount plus interest. While the issuance of a refund check was not in and of itself a

---

[2] See, e.g., Drummond Co. v. United States, No. CV 91-P-2575-S, 1992 WL 184216, at *4 (N.D. Ala. May 29, 1992) (holding that "Form 870-AD . . . did not end the extension agreed to in Form 872-A" because the parties "had not arrived at an agreement disposing of all issues").

"final determination,"[3] we do not have here merely a refund check, but rather an agreement in the Form 870-AD that was final except for specifically reserved issues. The payment of the requested refund concluded FNMA's rights under the plain language of the Form 870-AD reservation because FNMA had then filed a "timely . . . claim[]" for refund and had successfully "prosecute[d]" the claim by securing the refund. Once the refund check issued, the IRS could not assess any additional tax under the terms of Form 870-AD.[4] Thus, once the conditions of the Form 870-AD reservation were met, there was a "final determination" of all of the issues for tax year 1983 barring any further assessment. FNMA's 1983 tax year closed six months thereafter because under § 6511(c) and the terms of Form 872-A taxpayers cannot file refund claims after that date.

Even if the IRS could have claimed a return of the refund after the refund check was issued on May 1, 1995, the limitations period for reclaiming an erroneous refund expired before 1998. Code § 6532(b) provides that the IRS has two years after making an erroneous refund to file a suit to recover the refund under § 7405.[5] The IRS issued

---

[3]    Form 872-A excludes "assessments of tax . . . reported on amended returns" from the events that constitute a "final determination of tax." See also Burnet v. Porter, 283 U.S. 230 (1931); Milleg v. Comm'r, 19 T.C. 395, 398 (1952) ("The allowance of the refund was not a final determination.").

[4]    The Court of Federal Claims stated that assessment could still be made for ninety days after the refund check was issued. Fed. Nat'l Mortgage Ass'n, 69 Fed. Cl. at 94. The government disputes this conclusion and argues that the ninety-day provision for additional assessments only applies to the first paragraph of Form 872-A. According to the government, the Form 872-A terminated on the date the refund check was issued. However, we need not resolve this dispute here. Even if the ninety-day provision applied, the statute of limitations for FNMA's tax year 1983 expired long before July 22, 1998.

[5]    Section 6532(b) provides:

FNMA's refund check on May 1, 1995, and § 6621(d) was enacted July 22, 1998. If the two year statute of limitations applies, the IRS could not have filed an erroneous refund suit on or after July 22, 1998.

## CONCLUSION

For these reasons, the grant of summary judgment in favor of the government was proper.

### AFFIRMED.

### COSTS

No costs.

---

> Recovery of an erroneous refund by suit under section 7405 shall be allowed only if such suit is begun within 2 years after the making of such refund, except that such suit may be brought at any time within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact.

Although the statute of limitations for fraud extends past July 22, 1998, as noted earlier, we do not think that the fraud provision is sufficient to keep the statute of limitations open for purposes of § 6621(d).

06-5055                                           18