EXXON MOBIL CORPORATION AND AFFILIATED COMPANIES,
F.K.A. EXXON CORPORATION AND AFFILIATED COMPANIES,
PETITIONERS *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket Nos. 18618–89, 18432–90.        Filed February 3, 2011.

The Tax Reform Act of 1986, Pub. L. 99–514, sec. 1511(a), 100 Stat. 2744, modified sec. 6621, I.R.C., to increase the interest required to be paid by taxpayers to the Government on underpayments to a higher rate than the Government was required to pay taxpayers on overpayments. This resulted in taxpayers' having to pay interest to the Government even when underpayments were offset by overpayments; i.e., when no tax was due. In 1998 Congress enacted sec. 6621(d), I.R.C., and an uncodified special rule set forth in the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105–206, sec. 3301(c)(2), 112 Stat. 741, as amended by the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105–277, div. J, sec. 4002(d), 112 Stat. 2681–906 (1998), to eliminate the interest rate differential on overlapping periods of interest on overpayments and underpayments. Ps seek relief from interest rate differentials due on underpayments for 1975 through 1978 and equivalent overpayments for 1979 and 1980. Respondent disputes the jurisdiction of the Court to make the determination and the applicability of interest netting to the facts of these cases. *Held*: Pursuant to sec. 7481(c), I.R.C., this Court has jurisdiction to determine interest netting pursuant to sec. 6621(d), I.R.C., and the uncodified special rule. *Held*, *further,* sec. 6621(d), I.R.C., and the uncodified special rule apply to 1979 and 1980, and petitioners are entitled to eliminate the interest rate differentials for the overlap periods in the amounts stipulated by the parties.

*Kevin L. Kenworthy* and *Alan I. Horowitz*, for petitioners.
*R. Scott Shieldes*, for respondent.

OPINION

HAINES, *Judge*: These consolidated cases are before the Court on respondent's motion to dismiss for lack of jurisdiction, petitioners' motion for partial summary judgment under sections 7481(c) and 6621(d) seeking a net interest rate of zero on equivalent underpayments and overpayments in Federal income taxes for overlapping periods preceding July 22,

1998, and respondent's cross-motion for partial summary judgment in opposition to petitioners' motion. [1]

The issues presented are: (1) Whether this Court has jurisdiction under section 7481(c) to resolve petitioners' section 6621(d) interest-netting claim; and (2) whether, pursuant to section 6621(d) and an uncodified special rule set forth in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105–206, sec. 3301(c)(2), 112 Stat. 741, as amended by the Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999 (1998 Act), Pub. L. 105–277, div. J, sec. 4002(d), 112 Stat. 2681–906 (1998), petitioners are entitled to a net interest rate of zero on equivalent underpayments and overpayments in Federal income taxes for overlapping periods preceding July 22, 1998.

The parties have stipulated the facts relevant to the instant motions.

## *Background*

Petitioners in these cases, Exxon Mobil Corp. & Affiliated Cos., are corporations organized and existing under the laws of the United States. Petitioners are successors in interest to Exxon Corp. & Affiliated Cos. All references to petitioners are either to Exxon Mobil Corp. & Affiliated Cos. or to Exxon Corp. & Affiliated Cos., where the context so requires. The parties have stipulated that an appeal would lie with the U.S. Court of Appeals for the Second Circuit.

### I. *Prior Determinations*

Petitioners filed timely consolidated Federal income tax returns for 1975 through 1980 that were audited by the Internal Revenue Service (IRS) over a period ending in 1990. Adjustments that petitioners agreed to were assessed and the assessments, together with "underpayment interest", were paid. Unless otherwise specified or the context otherwise requires, the term "underpayment interest" refers to interest provided for generally by section 6601(a), the term "overpayment interest" refers to interest provided for gen-

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code), as amended and in effect at relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

erally by section 6611(a), and the term "interest" refers to either or both.

A. *The 1979/1980 Litigation*

On June 29, 1989, respondent issued a notice of deficiency to petitioners, determining income tax deficiencies for 1977, 1978, and 1979.[2] Petitioners did not petition the Court in response to the notice of deficiency for 1977 and 1978, and, as a consequence, those deficiencies were assessed and paid. Petitioners did, however, file a timely petition in response to the notice of deficiency for 1979 which was assigned docket No. 18618–89 (1979 litigation).

On July 16, 1990, respondent issued a notice of deficiency to petitioners for 1980 as well as 1981 and 1982.[3] Petitioners timely filed a petition for redetermination in this Court for those years which was assigned docket No. 18432–90 (1980 litigation). During the course of respondent's audits, petitioners' administrative appeals, and the litigation of these cases, petitioners made a number of substantial advance payments to respondent of taxes and interest with respect to each of the tax deficiencies determined by respondent against petitioners for 1979 and 1980.

This Court has issued a number of opinions addressing the issues raised in these cases.[4] The parties ultimately resolved the remaining issues by agreement, and decisions were entered in accordance with the parties' agreed computations.

On February 27, 2004, this Court entered a revised stipulated decision in the 1979 litigation, determining that petitioners were entitled to credit or refund of an income tax overpayment for 1979. The revised stipulated decision became final within the meaning of section 7481(a) on May

---

[2] Before expiration of the periods of limitations on assessment for 1977, 1978, and 1979, the parties extended the time to assess for these years to June 30, 1989.

[3] Before expiration of the period of limitations on assessment for 1980, petitioners and respondent extended the time to assess tax for 1980 to July 18, 1990.

[4] See, e.g., *Exxon Mobil Corp. v. Commissioner*, 126 T.C. 36 (2006) (involving determination of proper rate of interest to be applied to overpayment interest after Jan. 1, 1995), affd. 484 F.3d 731 (5th Cir. 2007); *Exxon Mobil Corp. v. Commissioner*, 114 T.C. 293 (2000) (involving the deductibility of estimated dismantlement, removal, and restoration costs relating to the Prudhoe Bay, Alaska, oil field); *Exxon Corp. v. Commissioner*, T.C. Memo. 1999–247 (involving the deductibility of interest relating to contested tax deficiencies); *Exxon Corp. v. Commissioner*, 102 T.C. 721 (1994) (involving the computation of percentage depletion relating to the sale of natural gas); *Exxon Corp. v. Commissioner*, T.C. Memo 1993–616 (involving the allocation of profits from sales of Saudi Arabian crude oil), affd. sub nom. *Texaco, Inc. v. Commissioner*, 98 F.3d 825 (5th Cir. 1996); *Exxon Corp. v. Commissioner*, T.C. Memo. 1992–92.

27, 2004. Respondent promptly credited the overpayment determined in the 1979 litigation to petitioners' accounts for 1989, 1997, 1998, 1999, and 2000 and paid to petitioners overpayment interest. On June 14, 2004, respondent abated income tax and underpayment interest for 1979 in accordance with the decision entered in the 1979 litigation.

On July 28, 2004, this Court entered a stipulated decision in the 1980 litigation, determining in part that petitioners were entitled to credit or refund of an income tax overpayment for 1980. The stipulated decision became final within the meaning of section 7481(a) on October 26, 2004. On the same day, in accordance with the decision entered in the 1980 litigation, respondent refunded to petitioners the overpayment so determined and paid them overpayment interest. On November 15, 2004, respondent abated income tax and underpayment interest for 1980 in accordance with the decision in the 1980 litigation.

B. *The 1975 Litigation*

Petitioners also litigated their Federal income tax liabilities for 1975 through 1978 in other forums. They consented to the assessment of adjustments to which they did not agree, paid the tax and interest assessed, and filed claims for refund. Petitioners' refund claims for 1975 through 1978 were not attributable to either interest or interest netting but established the predicate for the subsequent refund litigation described below. In 1995 respondent allowed some of petitioners' refund claims and abated income tax and underpayment interest that reduced but did not eliminate the underpayments previously assessed and paid for 1975 through 1978.

On October 30, 1996, petitioners timely filed a complaint in the U.S. Court of Federal Claims seeking a refund of income tax for 1975 (1975 litigation). Following a trial on the merits of the substantive issues in the 1975 litigation, the Court of Federal Claims issued findings of fact and conclusions of law. *Exxon Corp. v. United States*, 45 Fed. Cl. 581 (1999). Both parties appealed, and the Court of Appeals for the Federal Circuit affirmed in part and reversed in part, directing the Court of Federal Claims to calculate the resulting refund due petitioners. *Exxon Mobil Corp. v. United*

*States*, 244 F.3d 1341 (Fed. Cir. 2001). On November 6, 2001, judgment was entered in the 1975 litigation pursuant to stipulation of the parties (1975 judgment).

On March 18, 2002, respondent satisfied the 1975 judgment. On April 8, 2002, respondent abated income tax and related underpayment interest in compliance with the 1975 judgment that reduced but did not eliminate the underpayments previously assessed and paid for 1975.

### C. *The 1976 Litigation*

On April 18, 2000, petitioners filed a complaint in the U.S. District Court for the Northern District of Texas seeking an income tax refund for 1976 (1976 litigation). On March 10, 2003, following a trial on the merits of the substantive issues, the District Court issued findings of fact and conclusions of law. *Exxon Mobil Corp. v. United States*, 253 F. Supp. 2d 915 (N.D. Tex. 2003). Petitioners appealed to the U.S. Court of Appeals for the Fifth Circuit.

While the 1976 litigation was docketed on appeal, the parties reached a settlement that required a refund to be paid. Respondent paid the refund, and, pursuant to the settlement, abated income tax and related underpayment interest for 1976 that reduced but did not eliminate the underpayments previously assessed and paid for 1976.

### D. *The 1977/1978 Litigation*

On September 17, 2002, petitioners filed a complaint in the U.S. District Court for the Northern District of Texas, seeking income tax refunds for 1977 and 1978 (1977/1978 litigation). The parties resolved the 1977/1978 litigation by agreement in 2003. Respondent refunded moneys to petitioners for both years in accordance with the resolution of the 1977/1978 litigation. Respondent abated income tax and related underpayment interest in accordance with the resolution for 1977 and 1978 that reduced but did not eliminate the underpayments previously assessed and paid for 1977 and 1978.

## II. *Interest Netting*

Before 1987, section 6621 applied the same annual interest rate to overpayments and underpayments. Therefore, if a

taxpayer owed the Government an underpayment and the Government, in turn, owed the taxpayer an overpayment in an equivalent amount, the amounts could be offset pursuant to section 6402 and no interest would be paid by either party.

However, beginning January 1, 1987, Congress amended section 6621 to increase the rate of interest a taxpayer paid on underpayments to a higher rate than a taxpayer received on overpayments. See Tax Reform Act of 1986 (TRA 1986), Pub. L. 99–514, sec. 1511(a), (b), (d), 100 Stat. 2744. Thus, a taxpayer could end up paying interest to the Government even in situations when no tax was due; i.e., when an underpayment and an overpayment offset each other.

Congress recognized that taxpayers should not be paying interest to the Government if no net tax was due. However, it took 10 years before the problem was addressed. In 1998 Congress again amended section 6621 by adding section 6621(d) to authorize interest netting for periods when overpayments and underpayments offset each other. See RRA 1998 sec. 3301, 112 Stat. 741. Section 6621(d) applied prospectively to periods of overlap after July 22, 1998. However, an uncodified special rule in RRA 1998 sec. 3301(c)(2) applied interest netting retroactively. Congress subsequently added to the rule the phrase "Subject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment" in a technical corrections amendment later the same year. See 1998 Act sec. 4002(d). The parties are now disputing the scope of interest-netting relief granted by section 6621(d) and the uncodified special rule.

Petitioners sought both administratively and in this Court to preserve their right to interest netting. During the ongoing litigation in the Court of Federal Claims and the District Court for the Northern District of Texas, on December 17, 1999, petitioners requested administrative interest-netting relief under newly enacted section 6621(d) and the uncodified special rule by filing a timely claim with respondent.

On February 28, 2005, petitioners timely filed a motion with this Court to redetermine postdecision interest for 1979 and 1980 pursuant to section 7481(c) and Rule 261, both of which provisions will be discussed shortly. But for the motion presently before this Court, petitioners have not asserted a claim attributable to interest netting in prior litigation.

After reflecting all of the underpayments and overpayments, together with interest, paid or credited by the parties for 1975 through 1980, the parties have stipulated the following summary of petitioners' income tax underpayment and overpayment balances that have not been previously netted for interest-netting purposes pursuant to section 6621(d). They have also stipulated the starting and ending dates of the periods of overlap:

| Year | *(Over)-/under-payment balance* | *Start date* | *End date* |
|------|-----------------:|------------|----------|
| 1975 | $45,327,497 | 1/1/87 | 12/22/87 |
| 1975 | 3,164,434 | 12/22/87 | 12/28/88 |
| 1976 | 6,218,939 | 1/1/87 | 12/22/87 |
| 1977 | 135,679,108 | 1/1/87 | 12/22/87 |
| 1977 | 119,043,520 | 12/22/87 | 7/18/88 |
| 1978 | 103,645,011 | 1/1/87 | 10/27/89 |
| 1979 | (137,750,546) | 1/1/87 | 10/27/89 |
| 1980 | (208,122,341) | 1/1/87 | 10/27/89 |

Should the Court grant petitioners' motion as it pertains to interest netting, the parties have also stipulated that petitioners would be entitled to additional interest in the following amounts:

| *Additional interest to be paid* | *Statutory interest date* |
|-----------------|------------|
| $565,612 ................................................................. | 12/28/88 |
| 66,033 ................................................................. | 12/22/87 |
| 4,434,833 ................................................................. | 10/27/89 |
| 3,864,292 ................................................................. | 10/27/89 |

## *Discussion*

### I. *Interest Provisions*

Section 6601 requires a taxpayer to pay interest on any income taxes remaining unpaid. Section 6601 provides:

SEC. 6601. INTEREST ON UNDERPAYMENT, NONPAYMENT, OR
EXTENSIONS OF TIME FOR PAYMENT, OF TAX.

(a) GENERAL RULE.—If any amount of tax imposed by this title * * * is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.

Conversely, section 6611 requires the Government to pay interest on any overpaid income taxes. Section 6611 provides:

SEC. 6611. INTEREST ON OVERPAYMENTS.

(a) RATE.—Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621.

Before 1987 interest netting was accomplished through section 6402, which authorizes the IRS to credit an overpayment owed to a taxpayer from one year against an underpayment owed by the same taxpayer to the Government from a different year. After the two amounts were offset, the interest rate was applied to the net underpayment or net overpayment, automatically resulting in less interest being paid or received by the taxpayer. An offset pursuant to section 6402 was used only if the underpayment and overpayment were both outstanding.

Effective January 1, 1987, TRA 1986 sec. 1511(a), (b), and (d) increased the rate of interest a taxpayer pays on underpayments to a higher rate than a taxpayer receives on overpayments. The interest rate differential under section 6621 applied to underpayments that were still outstanding at the end of 1986 as well as to new tax liabilities that arose after 1986. After the enactment of TRA 1986, the IRS no longer offset an outstanding overpayment and underpayment and applied an interest rate to the net amount pursuant to section 6402. Rather, underpayment interest was calculated at the higher underpayment rate while overpayment interest was calculated at the lower overpayment rate. If the taxpayer had equivalent overlapping overpayments and underpayments for a period, the Government collected net interest even though no tax was due to the extent of the overlap.

When TRA 1986 was enacted, Congress recognized the need for a global interest-netting procedure that would prevent taxpayers from having to pay net interest to the extent underpayments and overpayments were equivalent. Congress also recognized, however, that "The IRS requires substantial lead time to develop the data processing capability to net such underpayments and overpayments in applying differential interest rates." S. Rept. 99–313, at 185 (1986), 1986–3 C.B. (Vol. 3) 1, 185. Accordingly, Congress provided for a 3-year "transition period" during which interest netting would

be governed by IRS regulations. H. Conf. Rept. 99–841 (Vol. II), at II–785 (1986), 1986–3 C.B. (Vol. 4) 1, 785. By the close of that period, Congress stated that "the IRS should have implemented the most comprehensive netting procedures that are consistent with sound administrative practice." *Id.*

By 1996 the Department of the Treasury (Treasury) and the IRS had initiated a study but had not begun to implement regulations or comprehensive interest-netting procedures. See Announcement 96–5, 1996–4 I.R.B. 99; Notice 96–18, 1996–1 C.B. 370. In July 1996 Congress became impatient and statutorily commissioned the Secretary of the Treasury or his delegate to "conduct a study of the manner in which the Internal Revenue Service has implemented the netting of interest on overpayments and underpayments and of the policy and administrative implications of global netting" and to submit that study to Congress within 6 months. See Taxpayer Bill of Rights 2, Pub. L. 104–168, sec. 1208, 110 Stat. 1473 (1996).

In response, Treasury submitted a report to Congress in April 1997 which acknowledged that "Congress has previously concluded that comprehensive interest netting is desirable to the maximum extent feasible." See Department of the Treasury, Office of Tax Policy, Report to the Congress on Netting of Interest on Tax Overpayments and Underpayments 2 (1997) (Treasury report) (available at http://treasury.gov/resource-center/tax-policy/Documents/t0neting.pdf). But the Treasury report stated that the Treasury lacked statutory authority to implement global interest netting and recommended that Congress grant such authority with the following limitations: (1) Adopt the interest equalization approach rather than an extension of the credit/offsetting approach and require at least one overlapping period to have an outstanding balance in order for the interest equalization approach to apply; (2) limit interest netting to income taxes; (3) apply interest netting "only to tax years that are not barred by statute", citing principles of finality; (4) require the taxpayer to initiate interest netting and bear the burden of establishing entitlement; and (5) allow a phase-in period of 2 years. See *id.* at 41–42.

Congress rejected most of the recommendations, either in whole or in part, when it enacted section 6621(d). See RRA 1998 sec. 3301. Section 6621(d) provides:

SEC. 6621(d). ELIMINATION OF INTEREST ON OVERLAPPING PERIODS OF TAX OVERPAYMENTS AND UNDERPAYMENTS.—To the extent that, for any period, interest is payable under subchapter A and allowable under subchapter B on equivalent underpayments and overpayments by the same taxpayer of tax imposed by this title, the net rate of interest under this section on such amounts shall be zero for such period.

Section 6621(d) adopted the interest equalization approach but rejected the requirement that there be a balance outstanding for one overlap period. See H. Conf. Rept. 105–599, at 257 (1998), 1998–3 C.B. 747, 1011 (stating that interest netting under section 6621(d) is applied without regard to whether an overpayment or an underpayment is currently outstanding). Further, the net interest rate of zero applied even when special rules increased the rate of interest for large corporate underpayments under section 6621(c) or decreased the rate of interest for large corporate overpayments under section 6621(a). *Id.* Interest netting was not limited to income taxes and was made available "for any period" and for any "tax imposed by this title". The burden was not placed on the taxpayer to initiate interest netting or to establish entitlement. Rather, section 6621(d) required the IRS to automatically apply the net rate of zero on equivalent overpayments and underpayments for the overlapping period. Section 6621(d) significantly broadened the availability of interest netting beyond what was recommended by the Treasury report.

  Section 6621(d) was effective for periods of overlap beginning after July 22, 1998. The enactment of section 6621(d) was accompanied by an uncodified special rule (special rule) that permitted taxpayers to seek application of the interest-netting relief of section 6621(d) for periods of overlap preceding July 22, 1998, so long as certain administrative filing requirements were met. See RRA 1998 sec. 3301(c)(2). The special rule initially enacted did not refer to a statute of limitation. A technical correction provision, 1998 Act sec. 4002(d), amended RRA 1998 sec. 3301(c)(2) by adding: "Subject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment". The special rule, as amended, provides:

  (2) Special rule.—Subject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment, the amendments made by this section shall apply to interest for

periods beginning before the [July 22, 1998] date of the enactment of this Act if the taxpayer—

(A) reasonably identifies and establishes periods of such tax overpayments and underpayments for which the zero rate applies; and

(B) not later than December 31, 1999, requests the Secretary of the Treasury to apply section 6621(d) of the Internal Revenue Code of 1986, as added by subsection (a), to such periods.

The IRS promulgated Rev. Proc. 99–43, 1999–2 C.B. 579, to implement procedures for a taxpayer to request interest netting under section 6621(d) and the special rule. On December 17, 1999, petitioners requested administrative interest-netting relief by filing a timely claim with respondent on Form 843, Claim for Refund and Request for Abatement, in accordance with the revenue procedure.

RRA 1998 sec. 3301(b) also added section 6601(f) to clarify the offset provision of section 6402. Section 6601(f) provides:

SEC. 6601(f). SATISFACTION BY CREDITS.—If any portion of a tax is satisfied by credit of an overpayment, then no interest shall be imposed under this section on the portion of the tax so satisfied for any period during which, if the credit had not been made, interest would have been allowable with respect to such overpayment. The preceding sentence shall not apply to the extent that section 6621(d) applies.

If an outstanding overpayment is used to offset an outstanding underpayment under section 6402, a zero interest rate applies to the underpayment so offset. However, section 6402 applies only when the underpayment and the overpayment are both outstanding. Therefore, as section 6601(f) provides, it does not apply to situations covered by section 6621(d) where there may be no outstanding balances at the time the interest-netting determination is made.

## II. *Tax Court Jurisdiction*

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. See sec. 7442. Before 1988 it was well settled that this Court's jurisdiction to redetermine a deficiency in tax generally did not extend to statutory interest imposed under section 6601. See *Bax v. Commissioner*, 13 F.3d 54, 56–57 (2d Cir. 1993); *Asciutto v. Commissioner*, T.C. Memo. 1992–564, affd. per order 26 F.3d 108 (9th Cir. 1994). The only recourse for a taxpayer who disputed the amount of underpayment interest was to pay the disputed interest, file a claim for

refund, and then file a separate action either with a Federal District Court, 28 U.S.C. sec. 1346(a)(2) (2006), or with the Court of Federal Claims, 28 U.S.C. sec. 1491(a)(1) (2006). In contrast, consistent with section 6601(e), the Tax Court did have jurisdiction to redetermine statutory interest if a taxpayer had properly invoked the Court's overpayment jurisdiction pursuant to section 6512(b)(2). See *Barton v. Commissioner*, 97 T.C. 548, 554–555 (1991).

In 1988 the enactment of section 7481(c) in the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, sec. 6246(a), 102 Stat. 3751, gave the Tax Court jurisdiction to decide underpayment interest disputes after a decision for a deficiency became final, see H. Conf. Rept. 100–1104 (Vol. II), at 232 (1988), 1988–3 C.B. 473, 722 (providing that the new section allowed a motion to redetermine interest "If a dispute arises over the IRS' computation of the interest due on a deficiency"). There was some confusion, however, because section 7481(c) did not refer to overpayment interest.

In 1997 Congress amended section 7481(c) in the Taxpayer Relief Act of 1997, Pub. L. 105–34, sec. 1452(a), 111 Stat. 1054, to clarify that "the Tax Court's jurisdiction to redetermine the amount of interest under section 7481(c) does not depend on whether the interest is underpayment or overpayment interest." See H. Conf. Rept. 105–220, at 732–733 (1997), 1997–4 C.B. (Vol. 2) 1457, 2202–2203. Section 7481(c) provides:

> SEC. 7481(c). JURISDICTION OVER INTEREST DETERMINATIONS.—
> (1) IN GENERAL.—Notwithstanding subsection (a), if, within 1 year after the date the decision of the Tax Court becomes final under subsection (a) in a case to which this subsection applies, the taxpayer files a motion in the Tax Court for a redetermination of the amount of interest involved, then the Tax Court may reopen the case solely to determine whether the taxpayer has made an overpayment of such interest or the Secretary has made an underpayment of such interest and the amount thereof.

Thus, section 7481(c) grants the Tax Court nonexclusive jurisdiction, along with Federal District Courts and the Court of Federal Claims, to determine disputes with respect to the determination of underpayment and overpayment interest. H. Conf. Rept. 105–220, *supra* at 733, 1997–4 C.B. (Vol. 2) at 2203 (explaining that the clarification of this jurisdiction was not meant to "limit any other remedies that tax-

payers may currently have with respect to such determinations, including in particular refund proceedings relating solely to the amount of interest due").

In order for section 7481(c) to apply, this Court must have determined that there is an underpayment pursuant to section 6214(a) or an overpayment pursuant to section 6512(b), and the decision with respect to the overpayment or underpayment must be final. Section 7481(a) defines the circumstances when a decision of the Tax Court becomes final. As a general rule, this Court lacks jurisdiction once a decision becomes final.[5] *Taub v. Commissioner*, 64 T.C. 741, 750 (1975), affd. without published opinion 538 F.2d 314 (2d Cir. 1976). However, section 7481(c) provides a limited statutory exception to finality by authorizing the Court to reopen a case in which a final decision has been entered only for the purpose of determining postdecision interest disputes if the taxpayer files a motion for redetermination of interest within 1 year from the date the decision became final.

The revised stipulated decision of this Court in the 1979 litigation, docket No. 18618–89, establishing an overpayment for 1979 became final within the meaning of section 7481(a) on May 27, 2004. The stipulated decision of this Court in the 1980 litigation, docket No. 18432–90, establishing an overpayment for 1980 became final within the meaning of section 7481(a) on October 26, 2004. On February 28, 2005, petitioners timely filed a motion with this Court to redetermine interest for 1979 and 1980 pursuant to section 7481(c) and Rule 261.[6]

Although respondent concedes that petitioners have complied with the procedural requirements set forth in section 7481(c) and Rule 261, respondent contends that sec-

---

[5] There are limited exceptions to this rule. The Court may grant a motion for leave to consider: (1) Whether the Court had jurisdiction to enter the decision in the first instance, *Billingsley v. Commissioner*, 868 F.2d 1081, 1084–1085 (9th Cir. 1989), or (2) whether the decision entered was the result of fraud on the Court, *Abatti v. Commissioner*, 859 F.2d 115, 118 (9th Cir. 1988), affg. 86 T.C. 1319 (1986).

[6] RULE 261. PROCEEDING TO REDETERMINE INTEREST

(a) Commencement of Proceeding: (1) How Proceeding Is Commenced: A proceeding to redetermine interest on a deficiency assessed under Code section 6215 or to redetermine interest on an overpayment determined under Code section 6512(b) shall be commenced by filing a motion with the Court. The petitioner shall place on the motion the same docket number as that of the action in which the Court redetermined the deficiency or determined the overpayment.

(2) When Proceeding May Be Commenced: Any proceeding under this Rule must be commenced within 1 year after the date that the Court's decision becomes final within the meaning of Code section 7481(a).

tion 7481(c) does not grant this Court jurisdiction to determine interest netting pursuant to section 6621(d). Citing *Lincir v. Commissioner*, T.C. Memo. 2009–153, respondent argues that section 6621(d) is not an interest rate provision but a computation of a separate interest-netting amount for respondent to administratively apply. If there are no outstanding balances to offset under section 6402(a), respondent argues that the determination of a net rate of interest of zero will result in the payment of money to the taxpayer. Thus, respondent posits, a claim under section 6621(d) constitutes a general claim for money against the Government which must be brought in a separate proceeding. We disagree.

Section 6621(d) is, at its core, an interest rate provision. Section 6601 requires a taxpayer to pay interest on any income taxes remaining unpaid. Section 6611 requires the Government to pay interest on any overpaid income taxes. Both provisions refer to section 6621 to determine the rate of interest. Section 6621(a) initially sets the general overpayment and underpayment rates, subject to adjustments required by section 6621(b) and (c). Section 6621(d) reduces the interest rate set pursuant to section 6621(a) to the net rate of zero during overlap periods when underpayments and overpayments are equivalent. The fact that interest netting may result in the Government's owing money to a taxpayer does not morph section 6621(d) into a general claim for money. Section 6621(d) does not refer to an amount, only to a rate.

In *Lincir v. Commissioner*, *supra*, we recognized that section 6621(d) is an interest rate provision. *Lincir* dealt with the interaction of section 6621(d) and the interest component of the addition to tax for negligence under repealed section 6653(a). The taxpayer argued that interest netting should apply to the interest calculated on the underpayment attributable to negligence. The Court held against the taxpayer, finding that interest netting under section 6621(d) applies only to interest on underpayments and overpayments, not to interest on penalties or additions to tax. *Lincir* does not stand for the proposition that section 6621(d) requires an amount to be determined. *Lincir* was a collection due process case in which the abuse of discretion standard was applied in deciding whether to sustain the Commissioner's determination.

Congress directed the IRS to implement "the most comprehensive netting procedures that are consistent with sound administrative practice." H. Conf. Rept. 99–841 (Vol. II), *supra* at II–785, 1986–3 C.B. (Vol. 4) at 785. Such a statement is not limited to section 6402. It also applies to section 6621(d). In response, the IRS promulgated Rev. Proc. 99–43, *supra*, which sets forth interest-netting procedures for section 6621(d). Interest-netting claims should, for the most part, be resolved in administrative proceedings. Section 6621(d) does not require an interest-netting claim to be initiated in a separate action within the IRS or in a particular forum, respondent's assertions to the contrary notwithstanding.

If, however, the interest-netting claim under section 6621(d) cannot be settled administratively, various courts have been given concurrent jurisdiction to resolve the dispute. A taxpayer may file a suit for refund or for payment of additional overpayment interest in a Federal District Court, 28 U.S.C. secs. 1346(a)(1), 2401(a), or in the Court of Federal Claims, 28 U.S.C. secs. 1491(a)(1), 2501. In addition the taxpayer may, pursuant to section 7481(c), file a motion to redetermine interest when postdecision interest is disputed after a decision has become final. Petitioners have timely filed a motion with this Court to redetermine interest for 1979 and 1980 pursuant to section 7481(c).

We therefore hold that we have jurisdiction pursuant to section 7481(c) to determine interest netting under section 6621(d).

## III. *The Scope of Jurisdiction*

Respondent makes several arguments seeking to limit the scope of this Court's jurisdiction.

### A. *Determination of Interest Rates*

Respondent contends that because the Court is a court of limited jurisdiction, our jurisdiction under section 7481(c) must be limited to the determination of interest rates.

The title of section 7481(c) is "Jurisdiction Over Interest Determinations." However, the text clearly provides that "the Tax Court may reopen the case solely to determine whether the taxpayer has made an overpayment of such interest or

the Secretary has made an underpayment of such interest *and the amount thereof*." (Emphasis added.)

Rule 261(b)(3)(B) identifies the elements required to redetermine the amount of interest involved in an overpayment as "the amount and date of each payment in respect of which the overpayment was determined" and "the amount and date of each credit, offset, or refund received from the Commissioner in respect of the overpayment and interest claimed by the petitioner." Determining the amount of interest under section 7481(c) requires the Court to analyze the applicable rate, the principal amount, and the length of time the overpayment or underpayment is outstanding. Consequently, our jurisdiction under section 7481(c) necessarily covers the factors required to determine the proper amount of overpayment interest with respect to the years before the Court and is not limited to determination of interest rates. Within this framework overpayment interest can be determined without the necessity of multiple proceedings.

B. *Original Jurisdiction*

Respondent contends that our interest determinations under section 7481(c) must be limited to 1979 and 1980, years over which we have original jurisdiction, and not to prior years over which we have no jurisdiction.

In order to put this argument into perspective, we turn to section 6214, entitled "Determinations by Tax Court." Section 6214(b) provides:

SEC. 6214(b). JURISDICTION OVER OTHER YEARS AND QUARTERS.—The Tax Court in redetermining a deficiency of income tax for any taxable year * * * shall consider such facts with relation to the taxes for other years * * * as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year * * * has been overpaid or underpaid. * * *

The word "determine" as it is used in section 6214(b) has a specific and narrow meaning that is not implicated in this case. In *Hill v. Commissioner*, 95 T.C. 437, 439 (1990), the Court stated that it has "distinguished our authority under section 6214(b) to compute a tax for a year not before the Court from our lack of authority under that same section to 'determine' a tax for such year." See also *Lone Manor Farms,*

*Inc. v. Commissioner*, 61 T.C. 436, 440 (1974) (holding that section 6214(b) "does not prevent us from computing, as distinguished from 'determining,' the correct tax liability for a year not in issue when such a computation is necessary to a determination * * * for a year that has been placed in issue"), affd. without published opinion 510 F.2d 970 (3d Cir. 1975).

Petitioners argue, and we agree, that it is unnecessary for this Court to make any determinations for 1975–78, the underpayment years over which we have no jurisdiction. The underpayment for 1975 was determined after a trial on the merits of the substantive issues and appeal to the Court of Appeals for the Federal Circuit. *Exxon Mobil Corp. v. United States*, 244 F.3d 1341 (Fed. Cir. 2001). Judgment was entered on November 6, 2001, pursuant to stipulation of the parties. The underpayments for 1976, 1977, and 1978 were determined by settlement after petitioners had filed complaints in the District Court for the Northern District of Texas. The settlement for 1976 was reached while the case was on appeal to the Court of Appeals for the Fifth Circuit after a trial on the merits of the substantive issues. *Exxon Mobil Corp. v. United States*, 253 F. Supp. 2d 915 (N.D. Tex. 2003).

These determinations by courts of competent jurisdiction do not require further determinations by this Court. The parties have stipulated the balances of underpayments and overpayments for 1975 through 1980, the applicable overlap periods, and the applicable amounts of interest. We may consider these facts related to the 1975–78 underpayment years to determine interest netting for the 1979 and 1980 overpayment years, years over which we do have jurisdiction. See sec. 6214(b).

IV. *The Impact of the Special Rule*

A. *Introduction*

For convenience, we again quote pertinent portions of the special rule:

(2) Special rule.—Subject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment, the amendments made by this section shall apply to interest for

periods beginning before the [July 22, 1998] date of the enactment of this Act * * *

When the special rule was originally enacted, it extended interest-netting relief retroactively and did not contain the introductory "subject to" language. See RRA 1998 sec. 3301(c)(2). The "subject to" language was added a few months later and was explicitly designated a technical correction. See 1998 Act sec. 4002(d).

The parties have stipulated that the period for filing suit for payment of additional overpayment interest for 1979 and 1980, the overpayment years before us, as generally provided under 28 U.S.C. secs. 2401 and 2501 (2006), had not expired as of July 22, 1998. However, the parties do not ask us to decide in this proceeding the status of 1975–78 with respect to the "subject to" language of the special rule.

Petitioners argue that retroactive application of section 6621(d) via the special rule is available where the limitations period for *either* the overpayment period *or* the underpayment period had not expired as of July 22, 1998. Respondent argues that the special rule, as amended, restricts retroactive interest netting to cases where *both* the overpayment and underpayment years are open as of July 22, 1998, the effective date of section 6621(d).

The same arguments were made in *FNMA v. United States*, 379 F.3d 1303, 1307 (Fed. Cir. 2004) (FNMA I), where the Court of Appeals for the Federal Circuit, when interpreting the special rule, stated: "we agree that the language at issue—'[s]ubject to any applicable statute of limitation not having expired with regard to either a tax underpayment or a tax overpayment'—is equally subject to both proffered interpretations, the parties' efforts to persuade us to the contrary notwithstanding." We also find the "subject to" language susceptible to either interpretation and cannot determine, from the language itself, which interpretation Congress intended.

Respondent bases his position on Rev. Proc. 99–43, *supra*, which pronounced that both periods had to be open, and the Court of Appeals' decision in FNMA I, which came to the ultimate conclusion that the special rule was a waiver of sovereign immunity that required strict construction of the statute in favor of the Government.

B. *Rev. Proc. 99–43*

Respondent argues that we should give *Skidmore* deference to Rev. Proc. 99–43, *supra*. See *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). The revenue procedure was promulgated 16 months after the special rule's enactment and states that the special rule requires that "both periods of limitation applicable to the tax underpayment and to the tax overpayment * * * must have been open on July 22, 1998". Rev. Proc. 99–43, sec. 4.01, 1999–2 C.B. at 580. The pronouncement in the revenue procedure is not supported by any analysis of text or legislative history or any other relevant guidance. It is not an interpretation but a litigation position. The extent to which deference is accorded a given agency pronouncement "[depends] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade". *Skidmore v. Swift & Co.*, *supra* at 140. Because the pronouncement in Rev. Proc. 99–43, *supra*, that both periods of limitation must be open is unaccompanied by any supporting rationale, it is not entitled to deference and does not provide a basis for resolving the issues before us. Accord FNMA I, 379 F.3d at 1307–1309.

C. *FNMA I*

In FNMA I a three-judge panel of the Court of Appeals for the Federal Circuit held that although Rev. Proc. 99–43, *supra*, does not provide a basis to decide the case, the special rule constitutes a waiver of sovereign immunity because it "discriminates between those claims for overpaid interest Congress has authorized and those it has not." *Id.* at 1310. Neither party in the case had raised sovereign immunity as an issue. The Court of Appeals went on to hold that the waiver was expressly conditioned by the introductory language "Subject to any applicable statute of limitation not having expired". Thus, the Court concluded that the term of consent in the special rule limited a court's jurisdiction to entertain a suit, that the principle of strict construction had to be applied, and that the principle assumed "primacy over any other tools or principles of statutory construction". *Id.* at 1311 n.8. Therefore, the principle of strict construction required an interpretation of the special rule in favor of the

Government. The Court of Appeals remanded the case to the Court of Federal Claims to determine whether the limitations period for the underpayment year was closed on July 22, 1998. On remand, the Court of Federal Claims granted summary judgment to the Government. See *FNMA v. United States*, 69 Fed. Cl. 89 (2005), affd. 469 F.3d 968 (Fed. Cir. 2006). In affirming the Court of Federal Claims, the Court of Appeals reaffirmed its position in FNMA I.

With all due respect to the Court of Appeals for the Federal Circuit, section 6621(d), as modified by the special rule, is a remedial statute that must be interpreted to achieve the remedial purpose Congress intended; i.e., taxpayer relief from disparate interest rates. And such an interpretation is appropriate regardless of whether the special rule constitutes a waiver of sovereign immunity. See *Sullivan v. Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1151–1152 (9th Cir. 1992) ("when the federal government waives its immunity, the scope of the waiver is construed to achieve its remedial purpose").

The Supreme Court has cautioned against overbroad use of the strict construction principle if a waiver of sovereign immunity is involved. See *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472–473 (2003); *United States v. Mitchell*, 463 U.S. 206, 216–219 (1983). The strict construction principle is actually "no more than an aid in the task of determining congressional intent." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 293 (1983) (O'Connor, J., dissenting). "The mere observation that a statute waives sovereign immunity * * * cannot resolve questions of construction. The Court still must consider all indicia of congressional intent." *Id.* at 294; see also *Franchise Tax Bd. v. USPS*, 467 U.S. 512, 521 (1984) (scope of waiver of sovereign immunity "can only be ascertained by reference to underlying congressional policy").

Section 6611(a) provides that "Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax". Section 6611(a) waives sovereign immunity. See *E.W. Scripps Co. & Subs. v. United States*, 420 F.3d 589, 597 (6th Cir. 2005); *Gen. Elec. Co. & Subs. v. United States*, 56 Fed. Cl. 488, 497 (2003) (such a waiver exists in section 6611), affd. in part and remanded in part 384 F.3d 1307 (Fed. Cir. 2004). While we find that the special rule is not

a waiver of sovereign immunity but an interest rate provision, the fact that the special rule is based on an existing waiver in section 6611 does not mean that the special rule itself is governed by the strict construction principle. See *Gomez-Perez v. Potter*, 553 U.S. 474 (2008) (concluding that a substantive provision in a section did not have the same high hurdle of being narrowly construed in favor of the Government as the waiver sovereign immunity provision, even though they were in the same section); see also *Dolan v. USPS*, 546 U.S. 481, 491–492 (2006); *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984).

The "subject to" language was added by a technical correction. Unlike a typical statutory amendment that operates prospectively and is designed to change prior law, a technical correction relates back to the original date of enactment. Congress turns to technical corrections when it wishes to clarify existing law or repair a scrivener's error, rather than to change the substantive meaning of the statute. *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1210–1211 (11th Cir. 1999); *Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankr. Court (In re Chateaugay Corp.)*, 89 F.3d 942, 954 (2d Cir. 1996). As a technical correction there is no doubt that the special rule was not intended to restrict interest netting but to extend interest-netting relief to periods of overlap preceding July 22, 1998, that were open on that date.

After considering the statutory text, legislative history and relevant policies surrounding section 6621(d), and the special rule, we hold that interest netting should be available even if only one applicable limitations period was open on July 22, 1998. Otherwise, any closed period would trump an open one. Moreover, two different limitation periods may apply to the same tax year. By way of example, if a taxpayer can file a timely suit for additional overpayment interest for a given tax year, such a year should be considered "open" even if a suit to redetermine the underlying tax liability is time barred.

For the foregoing reasons, we hold that: (1) We have jurisdiction pursuant to section 7481(c) to determine interest netting under section 6621(d) and the special rule; (2) the scope of our jurisdiction is limited to a determination of interest netting for 1979 and 1980, years for which the applicable limitations periods were open as of July 22, 1998; (3) section

6621(d) and the special rule require only one leg of the limitations period to be open as of July 22, 1998; and (4) petitioners are entitled to additional interest pursuant to section 6621(d) and the uncodified special rule in accordance with the stipulations and agreements of the parties.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

> *An order will be issued granting petitioners' motion for partial summary judgment and denying respondent's motion to dismiss for lack of jurisdiction and cross-motion for partial summary judgment.*